141 P.3d 806

**STATE of Arizona ex rel. Andrew P. THOMAS, Maricopa County Attorney, Petitioner,**

v.

**The Honorable Douglas L. RAYES, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**Anthony James Reynaga, Real Party in Interest.**

No. 1 CA–SA 06–0006.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 15, 2006.

Review Granted Jan. 9, 2007.

Andrew P. Thomas, Maricopa County Attorney By David E. Wood, Phoenix, Attorneys for Petitioner.

Susan Sherwin, Office of the Legal Advocate By Thomas J. Dennis, Deputy Legal Advocate, James P. Logan, Deputy Legal Advocate, Phoenix, Attorneys for Real Party in Interest.

## OPINION

HALL, Judge.

¶ 1 The Maricopa County Attorney seeks special action review of the trial court's order directing it to reinstate an expired plea offer after defense counsel failed to communicate it to her client Anthony James Reynaga. The superior court based its reinstatement order on *State v. Donald,* 198 Ariz. 406, 418, ¶ 44, 10 P.3d 1193, 1205 (App.2000), which permits a court to remedy a deprivation of effective assistance of counsel by compelling the state to reinstate a plea offer.

¶ 2 We originally stayed the trial court proceedings pending our consideration of the County Attorney's petition. In the exercise of our discretion, we now accept jurisdiction because the trial court's order compelling the County Attorney to reinstate its previous plea offer is an interlocutory order for which there is no adequate remedy by appeal pursuant to Arizona Revised Stat-

utes (A.R.S.) section 13–4032 (2001). *See State v. Espinosa,* 200 Ariz. 503, 505, ¶ 9 n. 3, 29 P.3d 278, 280 n. 3 (App.2001) (either party is entitled to seek special action relief from the trial court's ruling on defendant's challenge to prosecution's withdrawal of plea offer); *State ex rel. Romley v. Superior Court,* 181 Ariz. 378, 379, 891 P.2d 246, 247 (App. 1995) (accepting special action review of trial court's order disqualifying the state from prosecuting defendants); *see also* Ariz. R.P. Spec. Act. 1(a).

¶ 3 The County Attorney contends that the trial court's finding of excusable neglect was not sufficient to justify an application of the *Donald* remedy and that, in any event, we should reconsider *Donald* because its remedial holding violates the separation of powers clause of the Arizona Constitution. In response, Reynaga requests that, if we accept jurisdiction to correct the trial court's erroneous reasoning, we apply *Donald* and affirm the trial court's grant of the *Donald* remedy because the record contains sufficient facts to satisfy the requirements of *Donald.* We conclude that *Donald's* reinstatement remedy unnecessarily infringes on prosecutorial plea-bargaining authority. Therefore, we vacate the trial court's order. We also vacate our order staying further proceedings in this matter.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 4 Reynaga was charged with two offenses: armed robbery, a class 2 dangerous felony, in CR 2005–119508, and theft of means of transportation, a class 3 felony, in CR 2004–012417. On or about August 1, 2005, the County Attorney mailed Reynaga's defense attorney a letter stating "No offer at this time." Subsequently, on August 23, 2005, the County Attorney mailed defense counsel proposed plea agreements in both cases. In CR 2005–119508, the County Attorney offered to allow Reynaga to plead guilty to the armed robbery count as a class 2 nondangerous felony with a stipulation that he be sentenced to no fewer than five years in the Department of Corrections; the County Attorney also agreed to dismiss the allega-

tion that Reynaga committed the offense while on pretrial felony release in CR 2004–012417. In CR 2005–012417, the plea offer required Reynaga to plead guilty as charged in exchange for the County Attorney's agreement that Reynaga would be placed on supervised probation consecutive to his sentence in CR 2005–119508. Each agreement was contingent on Reynaga entering into the agreement in the other case. In each plea agreement, immediately following the description of the plea offense was the following sentence (in bold capital letters): "THIS OFFER EXPIRES AND IS REVOKED IF NOT ENTERED IN COURT BY *SEPTEMBER 15, 2005.*" The plea offer deadline passed without Reynaga making any response to the package plea offer.

¶ 5 According to defense counsel, she did not become aware of the County Attorney's plea offers to her client until October 31, 2005, the day of the trial management conference when she then located them in her file. The prosecutor refused to reinstate the plea offers. Subsequently the trial court conducted a settlement conference. At that conference, defense counsel explained to the trial court that her secretary, who was new at the time, misfiled the correspondence containing the plea offers in Reynaga's "secondary file" before counsel had a chance to review it.[1] The trial court, after finding that defense counsel "did not have actual knowledge of the plea offers, and had no reasons to know the plea offers were in her file," decided that Reynaga should have the opportunity to consider the lapsed plea offers and, relying on *Donald,* ordered the prosecutor to "re-open the plea offer in each cause to [Reynaga] with time for [him] to consider/reject the offer."

¶ 6 At a subsequent hearing, the trial court amplified its reasoning, explaining that although defense counsel's failure to convey the plea offers to Reynaga was an instance of "excusable neglect" rather than ineffective assistance of counsel as occurred in *Donald,* "the bottom line in [*Donald* ] was we're doing justice here ... regardless what the reason was...." When the trial court declined to

---

1. By "secondary file," counsel was apparently referring to the file for the less serious charge of theft of means of transportation.

reconsider its decision and scheduled a change of plea hearing at the request of Reynaga, the County Attorney filed a petition for special action in this court.

## DISCUSSION

■ ¶ 7 The County Attorney asks us to reconsider our previous decision in *Donald* in which we held that a defendant's Sixth Amendment right to effective assistance of counsel encompasses the right to be adequately informed by defense counsel of the terms of any plea offer made by the state and the relative merits of the offer compared to proceeding to trial. 198 Ariz. at 413, ¶ 14, 10 P.3d at 1200. To establish ineffective assistance of counsel during plea negotiations, a defendant must show both deficient performance, i.e., that counsel's performance fell below objectively reasonable standards, and resulting prejudice. *Id.* at 413, ¶ 15, 10 P.3d at 1200 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). According to the *Donald* majority, a trial court's power to fashion a remedy for the deprivation of effective assistance includes ordering reinstatement of the plea agreement. *Id.* at 415, ¶ 30, 10 P.3d at 1202.

¶ 8 Although she concurred in the majority's holding that the loss of a favorable plea agreement due to counsel's ineffective assistance inflicts a constitutionally significant injury upon a defendant, Judge (now Justice) Berch dissented from the majority's remedial holding that permits a trial judge to order the prosecution to reinstate a plea agreement. *Id.* at ¶¶ 48–52, 418–19, 10 P.3d at 1205–06. In her view, "ordering the prosecution to offer a particular plea agreement transgresses too deeply into the prosecutorial realm and usurps too great a portion of the function of the executive to comport with separation of powers principles." *Id.* at 418–19, ¶ 48, 10 P.3d at 1205–06.

■ ¶ 9 Before considering the County Attorney's argument that *Donald* was

wrongly decided, we first address the trial court's characterization of defense counsel's failure to communicate the plea offer to Reynaga as "excusable neglect." We presume the trial court borrowed this concept from Arizona Rule of Civil Procedure 6(b), which permits a court to enlarge a time deadline when "the failure to act was the result of excusable neglect." *See also* Ariz. R.Crim. P. 32.1(f) (excusing the delay when "[t]he defendant's failure to file a notice of postconviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part"). Notwithstanding the unusual circumstances of this case and the trial court's understandable desire to correct what it perceived to be an injustice, a finding of "excusable neglect" on the part of a defendant's attorney in failing to convey a plea offer to a client does not constitute sufficient justification for a court to coerce a prosecutor to reinstate a lapsed plea offer. Indeed, neglect that is "excusable" is the apparent antithesis of a level of performance that falls below an objectively reasonable standard. *See City of Phoenix v. Geyler*, 144 Ariz. 323, 331, 697 P.2d 1073, 1081 (1985) ("The standard for determining whether conduct is 'excusable' is whether the neglect or inadvertence is such as might be the act of a reasonably prudent person under the same circumstances."); *id.* at 332, 697 P.2d at 1082 (stating that "diligence is the final arbiter of whether mistake or neglect is excusable"). In *Donald*, we reached the issue of the appropriate remedy only after finding that the defendant presented a colorable claim that he was denied effective assistance of counsel. 198 Ariz. at 415, ¶ 29, 10 P.3d at 1202 ("Whether Donald is entitled to any remedy will remain uncertain until the trial court determines whether he was denied effective assistance of counsel."). As far as we have been able to determine, no court in the United States has ordered a *Donald*—type remedy unless it first found that defense counsel failed to provide effective assistance under the Sixth Amendment.[2] Thus, the trial court

---

**2.** *E.g., United States v. Day*, 969 F.2d 39, 47 (3d Cir.1992) (stating that "discussion of any remedy is premature" before resolving defendant's claim for ineffective assistance of counsel on the merits); *Commonwealth v. Mahar*, 442 Mass. 11, 809 N.E.2d 989, 994–95 (2004) (refusing to reach issues of prejudice and remedy when defendant failed to establish that his counsel was "constitutionally ineffective"); *see also Judd v. Bollman*, 166 Ariz. 417, 419, 803 P.2d 138, 140 (App.1990) ("[A]bsent any constitutional violations ..., the judiciary has no authority to usurp the functions of the executive branch.").

erred in applying *Donald* based on a finding of excusable neglect.

■ ¶ 10 It is nonetheless clear that trial counsel's failure to communicate the County Attorney's plea offer to Reynaga constituted ineffective assistance, thereby implicating *Donald*.[3] Trial counsel acknowledged that she received a letter from the prosecutor on August 1, stating "No offer at this time." To her credit, she frankly admitted that she neglected to subsequently check for the existence of plea offers or to contact the prosecutor until three months later at the trial management conference held October 31. When the prosecutor informed her that the plea offers had expired September 15, she checked the files and discovered, to her "chagrin and humiliation," both plea offers "under a few pieces of paper in the secondary file." Trial counsel's ignorance of the existence of written plea offers that had been received by her office in August and thereafter placed in one of Reynaga's office files combined with her failure to follow-up with the prosecutor for a period of ninety days regarding plea negotiations, particularly in view of the County Attorney's policy of frequently imposing plea offer deadlines, cannot be characterized as objectively reasonable conduct under *Strickland's* deficient performance prong. Indeed, before us, the parties agree that trial counsel's failure to be aware of and communicate the plea offer to Reynaga satisfies *Strickland's* first prong. Every reported case we have reviewed has

likewise concluded that such a failure constitutes deficient performance.[4]

■ ¶ 11 In addition to deficient performance, a defendant claiming that his counsel provided ineffective assistance must also establish prejudice. To establish prejudice as a result of counsel's failure to communicate a plea offer, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *see Donald*, 198 Ariz. at 414, ¶ 20, 10 P.3d at 1201 (requiring defendant to show that, but for his attorney's deficient advice, he would have accepted the plea offer and declined to proceed to trial). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

¶ 12 In the typical post-trial scenario involving a colorable claim of prejudice, an evidentiary hearing is necessary to determine the sincerity of a sentenced defendant's claim that he would have accepted the plea offer had he been aware of it (or had he understood it) *before* trial. *Donald*, 198 Ariz. at 414, ¶¶ 21–22, 10 P.3d at 1201. In this case, however, defendant has signed a plea agreement corresponding to the lapsed offer and his attempt to enter the court-mandated agreement was prevented only because the County Attorney petitioned this court for relief and obtained a stay of proceedings. Under these circumstances, defendant has

---

**3.** We are puzzled by the dissent's characterization of this portion of our opinion addressing the appropriateness of the *Donald* reinstatement remedy as dicta. See ¶ 39 *infra* ("Whether *Donald* was correctly decided is not properly before us."). As the dissent points out, the County Attorney urges us to grant relief, in part, on the basis that *Donald's* reinstatement remedy improperly impinges on prosecutorial discretion even though it did not specifically raise this issue in the trial court. Nonetheless the viability of the *Donald* remedy is squarely before us. Reynaga argues that we should follow *Donald* and affirm the trial court on the alternative basis that the record demonstrates that his attorney did not provide him effective assistance. In other words, according to Reynaga, the trial judge was right for the wrong reason. *See, e.g., Calderon–Palomino v. Nichols*, 201 Ariz. 419, 421, 36 P.3d 767, 769 (App.2001) ("We will not grant special action relief if a judge reaches the right result for

the wrong reason."). Because we agree with Reynaga's assertion that he received ineffective assistance, whether *Donald* was correctly decided is properly before us for determination.

Moreover, constitutional questions can be raised for the first time on appeal when the issue is one of public policy or of broad, general or state-wide concern, *see State v. Junkin*, 123 Ariz. 288, 290, 599 P.2d 244, 246 (App.1979), and, as here, has been fully briefed by the parties, *see Larsen v. Nissan Motor Corp.*, 194 Ariz. 142, 147, ¶ 12, 978 P.2d 119, 124 (App.1998).

**4.** *See Donald*, 198 Ariz. at 412, ¶ 11 n. 4, 10 P.3d at 1199 n. 4 (citing cases); *see also Griffin v. United States*, 330 F.3d 733, 737 (6th Cir.2003); *Nunes v. Mueller*, 350 F.3d 1045, 1056 (9th Cir. 2003); *Albanese v. United States*, 415 F.Supp.2d 244, 250 (S.D.N.Y.2005); *Harvey v. Texas*, 97 S.W.3d 162, 167 (Tex.App.2002).

established that he would have accepted the County Attorney's original plea offer had he been aware of it. The County Attorney does not contend otherwise.[5]

■ ¶ 13 We acknowledge that at least one court has questioned whether a defendant can establish the requisite prejudice *before* sentence is imposed or at least before a determination of guilt is made, because, until such time, it is unknown whether the attorney's deficient performance will actually result in a constitutionally significant injury—the reality of a harsher sentence—to his client. *See United States v. Gray,* 382 F.Supp.2d 898, 910 (E.D.Mich.2005) (stating that claims of ineffective assistance of counsel are "grossly premature" before conviction and sentencing because it requires courts to assume that a jury would have found a defendant guilty). Although there may be some merit to such a "no harm, no foul" approach, we think that it is unwise to require a defendant who is inadequately represented during plea negotiations to first proceed to trial to establish a constitutionally significant injury. Such a prerequisite would make it more difficult for a defendant to prove that he actually would have entered the plea agreement had he been aware of it and, conversely, if a defendant can meet this burden, will inevitably result in guilty verdicts obtained after an otherwise fair trial being set aside. Moreover, we have held that a defendant who fails to challenge before trial the withdrawal of a plea offer by the state is precluded from

later claiming in post-conviction relief proceedings that the withdrawal violated his rights under either the federal or state constitution. *Espinosa,* 200 Ariz. at 505–06, ¶¶ 9–10, 29 P.3d at 280–81. In any event, we assume that *Donald*-type relief can be granted before trial. *See United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981) ("The United States initially urges that absent some showing of prejudice, there could be no Sixth Amendment violation to be remedied. Because we agree with the United States, however, that the dismissal of the indictment was error in any event, we shall assume, without deciding, that the Sixth Amendment was violated in the circumstances of this case.").[6]

■ ¶ 14 Before discussing whether the *Donald* analysis withstands critical scrutiny, we believe it useful to review the separation of powers doctrine, particularly as applied in Arizona. The essential purpose of the doctrine of separation of powers is "to allow for independent functioning of each coequal branch of government within its assigned sphere of responsibility, free from risk of control, interference, or intimidation by other branches." *Nixon v. Fitzgerald,* 457 U.S. 731, 760–61, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *see also* The Federalist Papers, Nos. 47 and 48. This principle, which is implied in the structure of the United States Constitution, is stated expressly in Article 3 of the Arizona Constitution:

---

**5.** The dissent claims we should simply remand for an evidentiary hearing on the issue of ineffective assistance of counsel pursuant to *State v. Spreitz,* 202 Ariz. 1, 2–3, ¶¶ 4–9, 39 P.3d 525, 526–27 (2002), which requires that claims of ineffective assistance at trial be brought in post-conviction relief proceedings pursuant to Arizona Rule of Criminal Procedure 32. Here, however, the trial court has already extended each party an opportunity to be heard on the applicability of *Donald* to the circumstances of this case. Based on the record that has already been developed during these hearings, we believe a remand to conduct a further hearing is neither necessary nor appropriate.

**6.** At oral argument, the County Attorney additionally contended that Reynaga could not meet *Strickland's* prejudice prong because there is no right to a plea offer and his attorney's failure to communicate the offer resulted merely in a lost opportunity rather than a lost right. Regardless

whether such a failure amounts to the loss of an "opportunity" as opposed to a "right," we reject this argument, as have nearly all other jurisdictions that have considered it. *See, e.g., Nunes,* 350 F.3d at 1052 (defendant has a "right to counsel's assistance in making an informed decision once a plea ha[s] been put on the table"); *People v. Curry,* 178 Ill.2d 509, 227 Ill.Dec. 395, 687 N.E.2d 877, 888 (1997) (rejecting a similar argument because when the state chooses to engage in plea bargaining with defendant, "defense counsel's deficient performance deprive[s] defendant of his right to be reasonably informed as to the direct consequences of accepting or rejecting that offer"); *Turner v. Texas,* 49 S.W.3d 461, 466 (Tex.App.2001) (failure to inform a client of the imminent expiration of a plea offer "effectively deprives a client of a 'last chance' opportunity to avoid a potential sentence of much greater length than the terms of the offer and is an omission that falls below an objective standard of reasonableness.").

The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.

Accordingly, Arizona courts have long recognized that one of the fundamental governing principles of our State is that one branch of government must not be permitted to usurp the authority properly belonging to another branch. *See, e.g., Crawford v. Hunt,* 41 Ariz. 229, 237, 17 P.2d 802, 805 (1932) ("[E]xcept as the Constitution provides otherwise, and ... except as the Constitution authorizes it, neither [branch] can exercise any power which directly or indirectly tends to limit the constitutional independence and power of the other branches of government."); *Giss v. Jordan,* 82 Ariz. 152, 164, 309 P.2d 779, 787 (1957) ("It is very essential that the sharp separation of powers of government be carefully preserved by the courts to the end that one branch of government shall not be permitted to unconstitutionally encroach upon the functions properly belonging to another branch, for only in this manner can we preserve the system of checks and balances which is the genius of our government."); *Ahearn v. Bailey,* 104 Ariz. 250, 252, 451 P.2d 30, 32 (1969) ("The concept of separation of powers is fundamental to constitutional government as we know it."); *Mecham v. Gordon,* 156 Ariz. 297, 300, 751 P.2d 957, 960 (1988) ("Nowhere in the United States is this system of structured liberty [i.e., separation of powers] more explicitly and firmly expressed than in Arizona."); *State v. Dykes,* 163 Ariz. 581, 583, 789 P.2d 1082, 1084 (App. 1990) ("The ultimate aim of the doctrine is to preserve individual liberty against the improper aggrandizement of power by one branch of government.").

¶ 15 In *Dykes,* we explained the roles of the three branches of government in the enforcement of criminal laws:

The legislature possesses the power to define the acts which constitute crime and the power to prescribe punishment for those acts.

The executive branch also possesses important powers in this area. The decision of what charges, if any, will be filed, and the discretion to proceed or not to proceed after the criminal action has been commenced, properly reside in the executive branch. The prosecutor may decide which charges to bring and whether to assert any mandatory sentence-enhancing allegations.

The judiciary too has its role. "[W]hen the jurisdiction of a court has been properly invoked by the filing of a criminal charge, the disposition of that charge becomes a judicial responsibility." Sentencing discretion—the choice of a penalty within the range fixed by legislation—is part of the judiciary's responsibility.

*Id.* at 583–84, 789 P.2d at 1084–85 (citations omitted). When disputes have arisen regarding the division of authority among the three branches of government in the development and administration of the criminal laws, we have acted to prevent one branch from intruding upon the domain of another branch. *See, e.g., State v. Larson,* 159 Ariz. 14, 17, 764 P.2d 749, 752 (App.1988) (trial court cannot intrude upon the prosecutor's charging function by dismissing charges pursuant to misdemeanor compromise statute without the prosecutor's statutorily-required recommendation); *State v. Jones,* 142 Ariz. 302, 305, 689 P.2d 561, 564 (App.1984) (holding that DUI sentencing statute that permitted the trial court to impose an alternative sentence "based upon the prosecutor's recommendation" was unconstitutional in violation of Article 3 because "the decision to mitigate a sentence properly belongs to the judge and not the prosecutor"); *see also State v. Prentiss,* 163 Ariz. 81, 85, 786 P.2d 932, 936 (1989) ("[O]nce the legislature provides the court with the power to use sentencing discretion, the legislature cannot then limit the court's exercise of discretion by empowering the executive branch to review that discretion.").

¶ 16 However, notwithstanding Article 3's "separate and distinct" clause, Arizona courts have also long recognized that an absolute separation of powers is neither required nor practical. As noted by our supreme court in *Prentiss:*

The separation of powers does not require a "hermetic sealing off" of the three branches of government. There are common boundaries among the legislative, executive and judicial branches. The mandate of the doctrine is to protect one branch against the overreaching of any other branch.

163 Ariz. at 84–85, 786 P.2d at 935–36. In some areas the overlap of powers is explicitly authorized by our constitutional system of checks and balances. *See, e.g.,* Ariz. Const. Art. 5, § 5 ("The Governor shall have the power to grant reprieves, commutation, and pardons ... upon such conditions and with such restrictions and limitations as may be provided by law."). In other instances, the blending of powers, although not explicitly authorized by the Constitution, is permissible because the blending does not result in one branch exercising the whole power of the other branch. *See J.W. Hancock Enter. Inc. v. Ariz. State Registrar of Contractors,* 142 Ariz. 400, 405, 690 P.2d 119, 124 (App.1984) ("[T]he separation of powers doctrine does not forbid all blending of powers, but only is intended to keep one branch of government from exercising the whole power of another branch."); *see also* The Federalist Papers, No. 47 ("[W]here the *whole* power of one department is exercised by the same hands which possess the *whole* power of another department, the fundamental principles of a free constitution are subverted.").

¶ 17 For example, although Article 6, Section 5 of the Arizona Constitution vests power to make procedural rules with the Arizona Supreme Court, and rules of evidence generally are regarded as procedural, statutory evidentiary rules that can be viewed as supplemental to court rules have been upheld. *See State v. Gilfillan,* 196 Ariz. 396, 404, ¶ 28, 998 P.2d 1069, 1077 (App.2000) (finding that A.R.S. § 13–1421, Arizona's Rape Shield Law, "neither impermissibly infringes upon the Arizona Supreme Court's rulemaking authority nor violates the doctrine of the separation of powers"); *see also State ex rel. Collins v. Seidel,* 142 Ariz. 587, 591, 691 P.2d 678, 682 (1984) (statutory rule establishing procedure for evidentiary admission of results of blood alcohol tests does not violate Article 6, Section 5).

¶ 18 The dividing line between permissible blending versus unconstitutional usurpation is often blurred; in such instances, there is no bright-line test that reveals whether one branch has exceeded its proper role. Instead, the resolution of separation of powers claims requires "ad hoc determinations focused on insuring sufficient checks and balances to preserve each branch's core functions." *Hancock,* 142 Ariz. at 405, 690 P.2d at 123–24. In *Hancock,* we set forth a four-part test to determine whether one branch of government "is exercising 'powers properly belonging to either of the others.'" *Id.* at 404–05, 690 P.2d at 124–25 (quoting Ariz. Const. art. 3). Under *Hancock,* as applicable to an alleged usurpation of prosecutorial authority by a judge, we examine the nature of the power being exercised, the degree of judicial control in the exercise of that power, the judicial objective, and the practical consequences of the judicial action. *Id.* at 405, 690 P.2d at 124.

¶ 19 The County Attorney contends that the decision to engage in plea bargaining and the terms of any plea offer made (including plea offer cutoff deadlines) constitute core prosecutorial functions and that a court-compelled plea agreement violates separation of powers principles. The *Donald* majority, although it acknowledged that plea bargaining was a core prosecutorial function and that a court-ordered reinstatement of the plea was "undeniably" coercive, nonetheless concluded that the ends (remedying a constitutional deprivation) justified the means (curtailing prosecutorial control over plea bargaining):

We begin by considering the essential nature of the power to be exercised. Here, however, there is not one essential power but two: The first is the power of the prosecutor to decide whether to plea bargain and on what terms; the second is the power of the courts to fashion a remedy for a constitutional deprivation. *The narrow question is whether a court may impinge upon the first power if necessary to accomplish the second.*

198 Ariz. at 417, ¶ 38, 10 P.3d at 1204 (emphasis added).

¶ 20 *Donald* offered several rationales as the basis for its reinstatement remedy. First, the majority, citing *Mabry v. Johnson,* 467 U.S. 504, 511 n. 11, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), and *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), claimed that "specific performance of a plea agreement is a constitutionally permissible remedy." *Donald,* 198 Ariz. at 416, ¶ 34, 10 P.3d at 1203. They then analogized a denial of effective assistance of counsel in plea bargaining to situations involving withdrawal of a plea offer by a prosecutor for vindictive reasons, a due process violation that courts have the power to remedy by reinstating a plea offer. *Id.* at 417, ¶ 39, 10 P.3d at 1204. Both scenarios, according to the *Donald* majority, share "a common element of remedial necessity." *Id.* at ¶ 40, 10 P.3d 1193. Third, they characterized the remedy of reinstatement as a "limited" intrusion on prosecutorial discretion over plea bargaining because such a remedy merely "return[s] the parties to the status quo ante by ordering the State to reinstate an offer that the State had earlier considered and approved[,]" *id.,* and "is not a general undertaking to subordinate the prosecutor's plea bargaining authority to the discretion of the courts" but, rather, permits a court to perform its "essential function ... to provide a remedy in the context of an individual case," *id.* at ¶ 42, 10 P.3d 1193. Fourth, the *Donald* majority determined that the "practical effect of the exercise of power," consisting of the substitution of the court's discretion for that of the prosecutor, was "substantially ameliorated" because the trial court must conduct a hearing before ordering reinstate-

ment at which time the state must be given the "opportunity" to "persuade" the court that a reinstatement order is inappropriate. *Id.* at 417, ¶ 43, 10 P.3d at 1204. The *Donald* majority concluded that "when all relevant factors are balanced, we do not find that a reinstatement order would so significantly encroach on the executive department as to amount to an unconstitutional usurpation of power." *Id.* at 418, ¶ 44, 10 P.3d at 1205.

¶ 21 We believe the *Donald* analysis is flawed for several reasons.[7] First, in determining that specific performance of a plea offer should be an available remedy to cure ineffective assistance, the majority failed to fully acknowledge the nature of plea bargaining and the extent to which it constitutes a core prosecutorial function. A defendant has no constitutional right to a plea bargain. *Weatherford v. Bursey,* 429 U.S. 545, 561, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *State v. Jackson,* 209 Ariz. 13, 15, ¶ 6, 97 P.3d 113, 115 (App.2004). As noted by the *Donald* dissent, "[w]hen or whether to offer a plea agreement is ... a core prosecutorial power [and] a matter committed to the sound discretion of the prosecution, an executive branch agency." 198 Ariz. at 418, ¶ 48, 10 P.3d at 1205 (internal quotations and citation omitted); *see also State v. Morse,* 127 Ariz. 25, 32, 617 P.2d 1141, 1148 (1980) ("Our country's legal system vests broad discretion in prosecuting attorneys. This discretion exists in the exercise of plea bargaining negotiations.").

¶ 22 The plea bargaining system is contractual in nature, *Coy v. Fields,* 200

---

7. *Donald* was decided by a panel of this court; therefore, it does not constitute binding precedent that we must follow. We nonetheless recognize that the " 'principle of stare decisis and the need for stability in the law in order to have an efficient and effective functioning of our judicial machinery dictate that we consider decisions of coordinate courts as highly persuasive and binding, unless we are convinced that the prior decisions are based upon clearly erroneous legal principles ....' " *Scappaticci v. Southwest Sav. & Loan Ass'n,* 135 Ariz. 456, 461, 662 P.2d 131, 136 (1983) (quoting *Castillo v. Indus. Comm'n,* 21 Ariz.App. 465, 471, 520 P.2d 1142, 1148 (1974)). Although departure from stare decisis requires "special justification," *State v. Hickman,* 205 Ariz. 192, 200, ¶ 37, 68 P.3d 418, 426 (2003), it is not "an inexorable command; rather, it 'is a

principle of policy and not a mechanical formula of adherence to the latest decision.' " *Payne v. Tennessee,* 501 U.S. 808, 828, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (quoting *Helvering v. Hallock,* 309 U.S. 106, 119, 60 S.Ct. 444, 84 L.Ed. 604 (1940)). With respect to *Donald,* we believe that, to the extent it empowers trial courts to compel reinstatement of plea offers absent any wrongdoing by the prosecutor or reliance by the defendant, it was incorrectly decided and that compelling reasons exist to chart a different path in resolving the important constitutional issue involved here. *See Payne,* 501 U.S. at 828, 111 S.Ct. 2597 (stare decisis applied less rigidly in constitutional cases because of the near impossibility of correction through legislative action).

Ariz. 442, 445, ¶ 9, 27 P.3d 799, 802 (App. 2001) ("Plea agreements are contractual in nature and subject to contract interpretation."), and is based on the mutuality of advantage it affords both the defendant and the state. *Morse,* 127 Ariz. at 32, 617 P.2d at 1148. Because a plea agreement is executory until entered by the defendant according to constitutional requirements and accepted by the court, either party may withdraw at will from a plea agreement at any time before the court accepts the defendant's guilty plea. *See* Ariz. R.Crim. P. 17.4(b) ("An agreement may be revoked by any party prior to its acceptance by the court."); *State v. McKinney,* 185 Ariz. 567, 575, 917 P.2d 1214, 1222 (1996). Thus, *Donald's* citations to *Mabry* and *Santobello* notwithstanding, a defendant has no *constitutional* right to specific enforcement of a plea offer, particularly in the absence of any misconduct by the prosecutor. *See Mabry,* 467 U.S. at 507, 104 S.Ct. 2543 (1984) ("[P]lea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in a judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest."); *see also State v. Turner,* 713 S.W.2d 327, 330 (Tenn.Crim.App.1986) ("[T]he [specific performance] remedy fashioned by the trial judge flies in the face of all the cited cases which hold that the plea agreements are not enforceable until they are accepted by the court.").

¶ 23 Second, rather than fashion a remedy that respected the state's significant interest in controlling the substance and timing of plea offers, *see Morrison,* 449 U.S. at 367–68, 101 S.Ct. 665 (cautioning that "[c]ases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and *should not unnecessarily infringe on competing interests* ") (emphasis added), the *Donald* majority accorded this factor little weight. For example, although they acknowledged that a court-compelled plea agreement intrudes on the prosecutor's discretion, the majority palliatively asserted that such a remedy merely "return[s] the parties to the status quo ante by ordering the State to reinstate an offer that the State had

earlier considered and approved." 198 Ariz. at 417, ¶ 40, 10 P.3d at 1204. In actuality, however, for reasons alluded to above, the *Donald* specific performance remedy does not restore the status quo ante. Instead, by taking away the prosecutor's plenary discretion to revoke a plea agreement prior to its acceptance, *see* Ariz. R.Crim. P. 17.4(b), and substituting in its place the court's discretion, the *Donald* specific performance remedy essentially places an ineffectively-assisted defendant in a superior position to that of an effectively-assisted defendant whose executory agreement can be revoked by the prosecutor at will. *See State v. Taccetta,* 351 N.J.Super. 196, 797 A.2d 884, 887–88 (App.Div.2002) ("[W]e are convinced that the best method of vindication and the fairest both to the State and to defendant, would be to return defendant to the position he was in prior to the plea offer. The State would then have the option of renegotiating a plea, and if it chose not to or if defendant rejected any offer made, he would then have the right to a new trial."). The state, no less than the defendant, is entitled to fair treatment. " '[J]ustice, though due to the accused, is due to the accuser also.... We are to keep the balance true.' " *State v. Superior Court (Williams),* 125 Ariz. 575, 578, 611 P.2d 928, 931 (1980) (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 122, 54 S.Ct. 330, 78 L.Ed. 674 (1934)); *cf. Mahar,* 442 Mass. 11, 809 N.E.2d 989, 1001 (Sosman, J., concurring) ("If the prosecutor can withdraw an offer even after it has been accepted by the defendant, it is hard to understand why the prosecutor cannot withdraw an offer that has not been accepted.").

¶ 24 Third, as the *Donald* majority acknowledges, the judicial remedy of reinstatement is undeniably coercive rather than cooperative. *See McDonald v. Thomas,* 202 Ariz. 35, 41, ¶ 15, 40 P.3d 819, 825 (2002) ("The second factor, the propriety of [the other branchs] regulation, is measured by determining whether the [other branchs] involvement is cooperative or coercive."). The *Donald* majority's claim that the judicial tender of a lapsed plea offer is justified on the basis of "remedial necessity" rings hollow. Although "the risk of constitutionally deficient assistance of counsel" must be borne by the state, *Kimmelman v. Morrison,* 477 U.S. 365, 379, 106 S.Ct. 2574, 91 L.Ed.2d 305

(1986), a defendant is not entitled to the remedy of his choosing, particularly when, as here, significant competing interests are involved.

¶ 25 Fourth, unlike the *Donald* majority, we are not persuaded that the "practical effect of a reinstatement order is substantially ameliorated" because a hearing must be held at which time the prosecution must be given an "opportunity" to persuade the court not to order the remedy of specific performance. 198 Ariz. at 417, ¶ 43, 10 P.3d at 1204. In our view, the practical effect of the action is clear. By empowering a trial court to resurrect a lapsed plea offer over a prosecutor's objection, *Donald* transfers control of the plea-bargaining process from the executive branch to the judicial branch. It hardly seems a sufficient response to the arrogation of such power for the invading branch to assert that the degree of intrusion is minimal because the branch whose power has been usurped can petition the invader for an exemption.

¶ 26 In conclusion, we agree with the *Donald* dissent that "ordering the prosecution to offer a particular plea agreement transgresses too deeply into the prosecutorial realm and usurps too great a portion of the function of the executive to comport with separation of powers principles." 198 Ariz. 406, 418–19, ¶ 48, 10 P.3d 1193, 1205–06. Our belief that the *Donald* reinstatement remedy impermissibly encroaches on the prosecutor's authority is shared by courts in other jurisdictions. *See, e.g., Gov't of the Virgin Islands v. Scotland,* 614 F.2d 360, 364–65 (3d Cir.1980) ("[B]inding the prosecutor to his original plea offer does interfere with his discretionary functions.... Such judicial interference in prosecutorial discretion involves an intermingling of their respective roles."); *Mahar,* 809 N.E.2d at 1002 ("Judicial pressure to force the prosecutor to drop valid charges is every bit as much a violation of separation of powers as is an outright judicial order that valid charges be dropped.") (Sosman, J., concurring); *Taccetta,* 797 A.2d at 887–88; *Commonwealth v. Napper,* 254 Pa.Super. 54, 385 A.2d 521, 524 (1978) ("[O]ur decision gives appellant only imperfect relief. We cannot compel the Commonwealth to reinstate its

plea bargain offer...."); *Turner,* 713 S.W.2d at 330.

¶ 27 The remaining question is the appropriate remedy. As noted earlier, this case is unusual in that it is still in the pretrial stage. Bearing in mind the proscription that the remedy for a Sixth Amendment violation "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests," *Morrison,* 449 U.S. at 364, 101 S.Ct. 665, and that a defendant should be returned as near as possible to the position he was in before the ineffective assistance of counsel occurred, we believe this can best be accomplished by directing the parties to return to the plea negotiation stage. Therefore, in this case, the County Attorney may not rely on the expired plea-offer deadline as a reason to avoid plea offer negotiations with Reynaga. Further, although the trial court cannot dictate the outcome of plea negotiations, it is permitted to participate in plea negotiations "by directing counsel having the authority to settle to participate in good faith discussion with the court regarding a non-trial or non-jury resolution which conforms to the interests of justice." Ariz. R.Crim. P. 17.4(a). This authority, when properly used, can enable a trial court to exert substantial influence over plea-bargaining negotiations without crossing the boundary separating judicial and executive functions. *See* cmt. to Ariz. R.Crim. P. 17.4(a) ("[T]he Court expects that ... judges will avoid coercive behavior of any kind.").

¶ 28 The remedy we adopt is a necessarily imperfect adjustment of the tension between the Sixth Amendment right to effective assistance of counsel and the separation of powers principles that would be violated if the trial court took control of the plea bargaining process away from the prosecutor. However, we believe that the requirement that the prosecutor re-open plea negotiations is the best resolution of these competing interests because it is less intrusive than the *Donald* specific performance remedy and is narrowly tailored to return a defendant to the position he was in without unnecessarily infringing on prosecutorial discretion. *See Morrison,* 449 U.S. at 364, 101 S.Ct. 665.[8]

---

8. We respectfully disagree with our dissenting colleague's assertion, based on the Supremacy

Clause, U.S. Const. art. VI, cl. 2, that we have

## CONCLUSION

¶ 29 Reynaga was deprived of effective assistance of counsel when his attorney failed to communicate the County Attorney's plea offer to him. However, the trial court exceeded its authority and violated separation of powers principles when it compelled the reinstatement of the expired plea offer in reliance on *Donald.* We vacate the trial court's order and remand this case for further proceedings consistent with this Opinion.

CONCURRING: JON W. THOMPSON, Judge.

NORRIS, Presiding Judge, concurring in part and dissenting in part.

¶ 30 Here, the Maricopa County Attorney tendered plea offers to Anthony James Reynaga through his attorney. From the limited record presented to the court below and now to this court, it appears defense counsel's staff received the offers but, without showing them to defense counsel, filed them in the "secondary file," defense counsel's file in the theft case. Because defense counsel never saw the offers, she never said anything about them to Reynaga and they expired.

¶ 31 At a trial management conference, defense counsel discovered the now-lapsed offers in her secondary file. Subsequently, the superior court found that what had happened was not the fault of Reynaga, was due to "excusable neglect" not "ineffective assistance of counsel" and ordered the County Attorney to re-extend the offers to Reynaga for his consideration. In making these findings and ordering the County Attorney to resubmit the offers, the superior court rejected the County Attorney's sole argument that the court's order to "give back the plea[s]" violated the separation of powers doctrine because the court had failed to find—indeed had affirmatively not found [9]— defense counsel's representation of Reynaga

had been "ineffective" as required by *State v. Donald,* 198 Ariz. 406, 10 P.3d 1193 (App. 2000), *review denied* (Mar. 20, 2001), *cert. denied,* 534 U.S. 825, 122 S.Ct. 63, 151 L.Ed.2d 30 (Oct. 1, 2001). In other words, the County Attorney simply argued the court could not, consistent with separation of powers principles, order it to re-extend the plea offers absent a finding of ineffective assistance of counsel. The County Attorney argued as follows:

> Your Honor, based upon that the State feels that [defense counsel] has been ineffective in representing the defendant. However, the Court did not find her to be ineffective, and the Court instead found that she had engaged in excusable neglect.
>
> However, that finding does not comport with any law that the State knows of with regard to criminal matters. It does not comport with the State versus Donald case which in that case there was an ineffective assistance of counsel finding, and based upon that the Court then ordered the State give back the plea.
>
> In this case you ordered us to give back the plea, and the State's position is that [sic] has been a violation of the Separation of Powers Doctrine because the Court did not make that finding pursuant to Donald or any case law that the State is aware of. Your Honor made that order based upon an excusable neglect finding, but the State knows of no law to support that finding.

¶ 32 After the court ordered the County Attorney to re-tender the plea offers, Reynaga attempted to accept the expired plea offers, signing them on November 29, 2005. The County Attorney then filed this special action and, in part, argued the superior court abused its discretion in ordering reinstatement of the plea offers based on nothing more than a finding of excusable neglect. The majority concludes that a finding of ex-

"[i]gnor[ed] the Sixth Amendment's place at the table in the plea bargaining process...." See ¶ 42 *infra.* Certainly, when there is an irreconcilable conflict between the Sixth Amendment and a state constitutional provision, the supremacy of the Sixth Amendment would prevail. *State v. Riggs,* 189 Ariz. 327, 330–31, 942 P.2d 1159, 1162–63 (1997). But the Supremacy Clause does not require that the remedy for a Sixth

Amendment violation be tailored to place a defendant in a better position than had he received effective assistance, particularly when, as here, there are legitimate competing interests involved. *See Morrison,* 449 U.S. at 364, 101 S.Ct. 665.

9. By minute entry, the superior court stated it was "not able to find ineffective assistance of counsel."

cusable neglect does not allow a court to order a prosecutor to reinstate a lapsed plea offer. *See supra* ¶ 9. I concur in the majority's decision on this issue.

¶ 33 Resolving this issue should have ended this matter. The order of reinstatement made by the superior court was without legal basis and the superior court abused its discretion in making it. As the County Attorney explained, quite correctly, to the superior court, *Donald* does not authorize a court to order reinstatement of plea offers based on nothing more than a finding of excusable neglect. Instead, *Donald* holds that if a defendant has been deprived of the Sixth Amendment right to effective counsel[10] during plea negotiations, the court has the power, "without violating separation of powers, [to] order the prosecution to reinstate a plea offer if, after conducting a hearing and permitting the State to present all relevant considerations, the court finds reinstatement necessary to remedy a deprivation of effective counsel." 198 Ariz. at 418, ¶ 44, 10 P.3d at 1205.

¶ 34 But, the majority does not stop there. At the County Attorney's urging, the majority goes on to find defense counsel's failure to tell Reynaga about the plea offers constituted ineffective assistance of counsel, "thereby implicating *Donald*."[11] *See supra* ¶ 10. The majority reaches this decision so it can declare, again at the County Attorney's urging, that *Donald* was wrongfully decided. In taking on the validity of *Donald*, the majority addresses an argument not raised by the County Attorney below and one actually inconsistent with the County Attorney's reliance on and acceptance of *Donald* in the superior court, as explained above. *See Crowe v. Hickman's Egg Ranch, Inc.*, 202

Ariz. 113, 116, ¶ 16, 41 P.3d 651, 654 (App. 2002) ("Issues not properly raised below are waived."). Given the majority's holding that the superior court abused its discretion in ordering the County Attorney to resubmit the plea offers to Reynaga based only on a finding of excusable neglect—a holding I agree with—the majority's disagreement with *Donald* is dicta, and has no precedential force. *See Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 81, 638 P.2d 1324, 1327 (1981) (dictum is court's statement on question not necessarily involved in case, is without force of adjudication, and is not controlling as precedent); *Creach v. Angulo*, 186 Ariz. 548, 552, 925 P.2d 689, 693 (App.1996) (same), *review granted, decision approved by Creach v. Angulo*, 189 Ariz. 212, 941 P.2d 224 (1997).[12]

¶ 35 To prevail on an ineffective assistance of counsel claim, the defendant must show, first, trial counsel performed deficiently under prevailing professional norms and, second, counsel's deficiency prejudiced him or her. *State v. Ysea*, 191 Ariz. 372, 377, ¶ 15, 956 P.2d 499, 504 (1998). To show prejudice, a defendant "must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at ¶ 17, 956 P.2d 499 (quoting *State v. Nash*, 143 Ariz. 392, 398, 694 P.2d 222, 228 (1985)) (adopting *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "A reasonable probability is sufficient to undermine confidence in the outcome." *Id.* (quoting *Nash*, 143 Ariz. at 398, 694 P.2d at 228). As an appellate court, we are not in a position to decide these issues because they normally require factual findings and thus an

---

**10.** The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."

**11.** In this regard, the majority correctly rejects the County Attorney's argument that because a defendant has no right to a plea offer, defense counsel's failure to communicate the plea offer to his or her client results merely in a lost opportunity, not a lost right. *See supra* note 6.

**12.** The majority asserts that its discussion of the "appropriateness of the *Donald* reinstatement remedy" is not dicta because, first, Reynaga has

asserted the record shows that defense counsel failed to provide effective assistance and, second, a constitutional issue can be raised for the first time on appeal when the issue is one of public policy or state-wide concern. *See supra* note 3. As to the first point, just because Reynaga argues the record shows this, does not make it so. *See infra* ¶¶ 36–37. As to the second point, I acknowledge appellate courts have addressed constitutional issues on appeal even though not previously raised. But, even so, an issue of constitutional significance should not be decided in the absence of a fully and fairly developed record.

evidentiary hearing. *See State v. Spreitz,* 202 Ariz. 1, 2, ¶ 5, 39 P.3d 525, 526 (2002) (trial court is "most appropriate forum" for such an evidentiary hearing).[13]

¶ 36 Despite this, the majority makes a finding that defense counsel's performance was deficient. *See supra* ¶ 10. Although, based on the limited record presented to us, it is impossible to reconcile defense counsel's conduct with prevailing professional norms, this simply is not a finding we should be making. That the majority makes this finding further underscores that its disagreement with *Donald* is dicta.

¶ 37 Further, whether defense counsel's conduct prejudiced Reynaga remains to be seen, contrary to the majority's finding. *See supra* ¶ 12 and note 5. Reynaga's post-expiration signing of the plea offers does not, in and of itself, show a "reasonable probability" that pre-expiration he would have accepted the offers but for defense counsel's conduct.[14] Other evidence may well exist showing Reynaga never intended to plead guilty and would have rejected the plea offers had he known about them, but then had a post-expiration change of heart. *See Lloyd v. State,* 258 Ga. 645, 373 S.E.2d 1, 3 (1988) (attorney's failure to communicate plea offer was not prejudicial; defendant would not have accepted or even considered offer); *State v. Stillings,* 882 S.W.2d 696, 703–04 (Mo.Ct.App.1994) (ineffective assistance of counsel claim rejected when evidence showed

defendant would have refused plea even if told about it). Reynaga's post-expiration signing of the plea offers raises a colorable claim of prejudice, nothing more. The majority's treatment of the prejudice issue again underscores that its rejection of *Donald* is merely dicta.

¶ 38 Accordingly, because the only issue properly before us concerns the legitimacy of the superior court's reinstatement order based on a finding of excusable neglect, we should simply vacate that order and remand to the superior court for further proceedings. On remand, the parties may reach acceptable plea agreements. If they do and the agreements are accepted by the court, any arguable prejudice caused by defense counsel's performance will become moot.[15]

¶ 39 This brings me to the majority's discussion of *Donald.* Whether *Donald* was correctly decided is not properly before us. Consequently, I hesitate to discuss the majority's criticisms of *Donald* and, by doing so, lend any support to the view that the viability of *Donald* is a question necessarily involved in this case, as it most assuredly is not. Nevertheless, the majority's criticism of *Donald* warrants some response.

¶ 40 Before there can even be a *Donald*-type remedy (the majority's shorthand reference to a reinstatement order), a court must first decide the defendant was denied what the constitution guarantees—the effective as-

---

**13.** Indeed, the Arizona Supreme Court has specifically directed that we are not to consider ineffective assistance of counsel claims "regardless of merit" in a direct appeal. *Id.* at 3, ¶ 9, 39 P.3d at 527.

**14.** In *Ysea,* the Arizona Supreme Court discussed the prejudice requirement in the context of a plea agreement. 191 Ariz. at 377, ¶ 17, 956 P.2d at 504. There, the defendant, who was charged with first degree murder, accepted a plea offer, pled guilty to manslaughter, and was sentenced to life imprisonment without the possibility of parole for 25 years. *Id.* at 374, ¶¶ 1–2, 956 P.2d at 501. The defendant had agreed to accept the plea offer based on erroneous advice from his lawyer regarding whether his prior conviction could be used as an aggravating factor thus triggering the possibility of a death sentence on a first degree murder conviction. *See id.* at ¶ 3, 956 P.2d 499. Relying on *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), our supreme court stated that to establish prejudice in the context of a plea agreement, a

defendant "must show a reasonable probability that except for his lawyer's error he would not have waived his right to trial and entered a plea." *Id.* at 377, ¶ 17, 956 P.2d at 504. Applying the approach taken by the United States Supreme Court in *Hill* and by our supreme court in *Ysea,* when, as appears to be the case here, a defendant is *not* notified of a plea offer by defense counsel, to meet the prejudice requirement the defendant should be required to show a reasonable probability that he or she would have accepted the offer and given up the right to stand trial.

**15.** Although the majority and I differ regarding the sufficiency of the record, I agree with the majority that it would be "unwise" to require a defendant who has been inadequately represented during plea negotiations to first proceed to trial to establish a constitutionally significant injury. *See supra* ¶ 13.

sistance of counsel. It must then decide whether reinstatement of the plea is necessary to remedy the deprivation of effective counsel. A finding of ineffectiveness does not, as the majority seems to think, automatically trigger a reinstatement order. As *Donald* recognized: "We hold that a trial court confronted with a denial of the right to effective assistance of counsel has the power to fashion a suitable remedy *which, if necessary and appropriate, may include an order to reinstate the plea offer.*" 198 Ariz. at 415, ¶ 30, 10 P.3d at 1202 (emphasis added). The court must conduct a hearing to determine the remedy appropriate to the case, and, at the hearing, the prosecution is entitled to present facts and considerations that lead it to oppose reinstatement. *Id.* at 417, ¶ 43, 10 P.3d at 1204.

¶ 41 Although a defendant has no constitutional right to a plea bargain and when, what, and whether to offer a plea is within the sound discretion of the prosecution, when a plea is offered the defendant has a constitutional right to the effective assistance of counsel during the plea negotiation process. And, that right becomes an integral part of the process, as the County Attorney, citing *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), has recognized in this special action: "The Sixth Amendment right to effective assistance of counsel applies to counsel's performance in the plea process." In other words, when it comes to plea negotiations, there are not just three interests at the table—the prosecution, the defendant, and the court. Instead, there are four interests at the table—the prosecution, the defendant, the court, and the Sixth Amendment to the United States Constitution.

¶ 42 Ignoring the Sixth Amendment's place at the table in the plea bargaining process, the majority concludes separation of powers principles bar a court from ordering the prosecution to reinstate a plea offer the prosecution had earlier considered and approved when the defendant has been deprived of the

effective assistance of counsel. It reasons "a defendant has no *constitutional* right to specific enforcement of a plea offer." *See supra* ¶ 22. The core of the majority's disagreement with *Donald* rests on its belief that the judicial remedy of reinstatement "transgresses too deeply into the prosecutorial realm and usurps too great a portion of the function of the executive to comport with separation of powers principles." *See supra* ¶ 26 (quoting *Donald,* 198 Ariz. at 418–19, ¶ 49, 10 P.3d at 1205–06 (Berch, J., dissenting)).

¶ 43 I respectfully disagree. In the abstract, I agree with the majority that a defendant has no constitutional right to the specific enforcement of a plea offer before its acceptance by the court. And in the abstract, I agree with the majority that a prosecutor has "plenary discretion to revoke a plea agreement prior to its acceptance" by the court.[16] *See supra* ¶ 23. But these abstract principles give way when the defendant has been deprived of the effective assistance of counsel in the course of the plea bargaining process. The prosecution's right to extend the plea offer and to withdraw it before court acceptance is a right created by state law. *Cf. State v. Lee,* 191 Ariz. 542, 544, ¶ 6, 959 P.2d 799, 801 (1998) ("Plea bargaining is nothing more than a pragmatic tool for enhancing judicial economy, conserving state resources, and promoting justice."). That right is not unlimited. When there is a conflict between a right created by state law and a right guaranteed by the United States Constitution, state law must give way. This is what the United States Constitution requires:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in

---

16. As with so many abstractions, there are exceptions. The prosecution's discretion whether, when, what, and how to plea bargain are not without constraint. *See, e.g., State v. Martin,* 139 Ariz. 466, 481, 679 P.2d 489, 504 (1984) (county attorney may not refuse to plea bargain "out of animus toward the defendant's attorney"); *State*

*v. Ethington,* 121 Ariz. 572, 573–74, 592 P.2d 768, 769–70 (1979) (refusing to enforce on public policy grounds plea provisions requiring defendant to waive right to appeal); *State v. Draper,* 162 Ariz. 433, 784 P.2d 259 (1989) (establishing test for determining if plea agreement provision violates due process).

the Constitution or Laws of any State to the Contrary not withstanding.

U.S. Const. art. VI, cl. 2; *see also McCulloch v. Maryland,* 4 Wheat. 316, 17 U.S. 316, 4 L.Ed. 579 (1819).

¶ 44 Because of the supremacy of the Sixth Amendment, I agree with the *Donald* majority. When a trial court is "confronted with a denial of the right to effective assistance of counsel [it] has the power to fashion a suitable remedy which, *if necessary and appropriate,* may include an order to reinstate the plea offer." *Donald,* 198 Ariz. at 415, ¶ 30, 10 P.3d at 1202 (emphasis added). In my view, the critical words in the foregoing quote from *Donald* are "necessary and appropriate." As I have explained, not every finding of ineffectiveness of counsel will require a reinstatement order. *See supra* ¶ 40. Other remedies may be appropriate depending on the circumstances. But, in those situations when only a reinstatement order will remedy the Sixth Amendment violation, to deprive the court of the power to order this remedy, as the majority would do, removes the Sixth Amendment from its place at the table once the prosecution decides to sit at the table and offer a plea.

¶ 45 As the United States Supreme Court has recognized, the Sixth Amendment right to effective assistance of counsel "constrains our ability to allocate as we see fit the costs of ineffective assistance." *Kimmelman v. Morrison,* 477 U.S. 365, 379, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). "The Sixth Amend-

ment mandates that the State bear the risk of constitutionally deficient assistance of counsel." *Id.* A reinstatement order, I acknowledge, will limit any further prosecutorial discretion in the plea bargaining process. But, depriving a court of the power to order reinstatement, when there is no other remedy for the deprivation of effective counsel, shifts the risk of ineffective assistance of counsel from the prosecution to the accused, contrary to the command of the Sixth Amendment.[17] *See United States v. Blaylock,* 20 F.3d 1458, 1469 (9th Cir.1994); *Ex parte Lemke,* 13 S.W.3d 791, 798 (Tex.Crim. App.2000).

¶ 46 In conclusion, I agree with the majority that the superior court exceeded its authority and violated separation of powers principles when it compelled reinstatement of the expired plea offers based solely on a finding of excusable neglect. I respectfully dissent from the remainder of the majority's opinion disagreeing with *Donald.*[18]

---

**17.** In addition to *Donald,* many courts have recognized that a court may order reinstatement of a plea offer when a defendant has been deprived of the effective assistance of counsel in the plea bargaining process. *E.g., Nunes v. Mueller,* 350 F.3d 1045 (9th Cir.2003) (habeas corpus proceeding); *United States v. Carmichael,* 216 F.3d 224 (2d Cir.2000); *United States v. Blaylock,* 20 F.3d 1458 (9th Cir.1994); *Shiwlochan v. Portuondo,* 345 F.Supp.2d 242 (E.D.N.Y.2004) (habeas corpus proceeding); *Williams v. State,* 326 Md. 367, 605 A.2d 103 (1992); *Harris v. State,* 875 S.W.2d 662 (Tenn.1994); *Ex parte Lemke,* 13 S.W.3d 791 (Tex.Crim.App.2000); *Turner v. Texas,* 49 S.W.3d 461 (Tex.App.2001); *Becton v. Hun,* 205 W.Va. 139, 516 S.E.2d 762 (1999).

**18.** Even assuming that, as a matter of separation of powers, the courts have no power to compel

the prosecution to reinstate an expired plea, the deprivation of the Sixth Amendment right to counsel that results from ineffective assistance of counsel during the plea process provides the court with the independent power to fashion an appropriate remedy for that ineffective assistance. In a post-conviction relief proceeding, a court may modify a sentence or conviction to comply with the plea the prosecutor earlier offered. *See* Ariz. R.Crim. P. 32.8(d) ("If the court finds in favor of the defendant, it shall enter an appropriate order with respect to the conviction, sentence or detention, any further proceedings, including a new trial and conditions of release, and other matters that may be necessary and proper."). Thus, the court achieves essentially the same result without any infringement on the prosecution's separate prerogatives.