**Marcus TURNER, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–99–410–CR.**

Court of Appeals of Texas,
Fort Worth.

May 17, 2001.

Rehearing Overruled July 26, 2001.

Danny Burns, Fort Worth, Attorney for Appellant.

Tim Curry, Crim. District Attorney; Charles M. Mallin, Chief of Appellate Division; David M. Curl, Anne E. Swenson, Sean D. Colston, Camille E. Sparks, Ass't District Attorneys, Fort Worth, Attorneys for Appellee.

Panel B: LIVINGSTON, HOLMAN, and GARDNER, JJ.

## OPINION

GARDNER, Justice.

### I. INTRODUCTION

Appellant Marcus Turner appeals from his conviction for capital murder. In five points, he contends that he received ineffective assistance of counsel during the plea bargaining process and that the trial court erred by admitting unauthenticated testimony regarding controlled substances, by failing to suppress his written statement, by denying his requested jury instruction concerning the voluntariness of his written statement, and by failing to dismiss the indictment due to prosecutorial misconduct. Because we conclude that Appellant's counsel rendered ineffective assistance, we reverse and remand.

### II. FACTUAL BACKGROUND

Appellant's written confession and testimony supplied the only account of the events surrounding the offense. At around 7:00 p.m. on the evening of January 31, 1996, Appellant Marcus Turner and four accomplices, including Reginald Breaux, Stormy Stanford, Mark Jackson, and Carlotta McCoy, robbed a Quick Stop convenience store near the intersection of Cooper Street and Park Row in Arlington, Texas. The robbery was planned, and all five participants wore dark clothes. Appellant, Breaux, McCoy, and Stanford entered the store while Jackson waited in the car at a video store located directly behind the convenience store. Appellant directed Stanford to go to the phone and act as a lookout and directed McCoy to look for the store's surveillance camera and to take the videotape. Appellant and Breaux walked around "looking like [they] were going to buy something." Breaux pulled out a .45 caliber pistol from his trousers and demanded money from the store clerk, Naif–El–Eid. El–Eid replied, "Here take the money, . . . I have kids, I have kids. Don't shoot me, please, please." Breaux shot El–Eid several times. Appellant went around the counter and grabbed approximately $92 out of the cash register drawer, and the participants left the store. El–Eid died at the scene as a result of a gunshot wound to the chest. (RR5: 26, 52, 54, 168-69). All of the participants, including Appellant, were eventually apprehended and prosecuted. Appellant was charged with capital murder and the State waived the death penalty. Following a jury trial, Appellant was found guilty and sentenced to life imprisonment.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In the interest of judicial economy, we first address Appellant's fifth point, in which Appellant contends that his trial

counsel rendered ineffective assistance by failing to inform him of the deadline attached to the State's plea offer before the offer was revoked.

### A. Standard of Review for Claims of Ineffective Assistance of Counsel

We apply a two-pronged test to ineffective assistance of counsel claims. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App.1999). First, Appellant must show that his counsel's performance was deficient; second, Appellant must show the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *Strickland*, 466 U.S. at 688–89, 104 S.Ct. at 2065. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066. An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, *i.e.*, a trial whose result is reliable. *Id.* at 687, 104 S.Ct. at 2064. In other words, Appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Id.* at 697, 104 S.Ct. at 2070.

### B. Ineffective Assistance of Counsel During Plea Bargaining

It is well established that a criminal defendant is entitled to effective assistance of counsel during the plea bargaining process. *Ex parte Wilson*, 724 S.W.2d 72, 73 (Tex.Crim.App.1987); *Flores v. State*, 784 S.W.2d 579, 580 (Tex.App.— Fort Worth 1990, pet. ref'd). Failure of defense counsel to inform a criminal defendant of plea offers made by the State is an omission that falls below an objective standard of reasonableness. *Ex parte Lemke*, 13 S.W.3d 791, 795 (Tex.Crim.App.2000); *Randle v. State*, 847 S.W.2d 576, 580 (Tex. Crim.App.1993); *Wilson*, 724 S.W.2d at 73–74; *Martinez v. State*, 28 S.W.3d 815, 818 (Tex.App.—Corpus Christi 2000, pet. granted); *Paz v. State*, 28 S.W.3d 674, 676 (Tex.App.—Corpus Christi 2000, no pet.); *Flores*, 784 S.W.2d at 580; *see also United States v. Blaylock*, 20 F.3d 1458, 1466 (9th Cir.1994) (holding failure to communicate plea bargain offer constitutes unreasonable performance under prevailing professional standards); *Johnson v. Duckworth*, 793 F.2d 898, 902 (7th Cir.) (recognizing defense attorneys have duty to inform clients of plea agreements proffered by state and failure to do so constitutes ineffective assistance), *cert. denied*, 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986); *United States ex rel. Caruso v. Zelinsky*, 689 F.2d

435, 438 (3rd Cir.1982) (holding failure to communicate plea bargain offer is denial of Sixth and Fourteenth Amendment rights).

However, the question of whether the failure to communicate a *deadline* attached to a plea offer falls below an objective standard of reasonableness is an issue of first impression. We have previously held that an attorney's duty to promptly communicate plea offers includes the obligation to fully advise his client of the terms and desirability of plea offers extended by the State. *Flores*, 784 S.W.2d at 581. While we do not believe that a deadline is necessarily a term of every plea offer,[1] there are certain circumstances in which a deadline becomes an essential term of a plea offer. For example, where a deadline is expressly attached to a plea offer, the deadline becomes an essential term of the plea offer.

According to the Texas Disciplinary Rules of Professional Conduct, "A lawyer shall keep a client reasonably informed about the status of a matter and ... shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03(a), (b), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX.STATE BAR R. art. X, § 9). The commentary accompanying the Texas Disciplinary Rules of Professional Conduct provides further guidance regarding the importance of fully communicating plea offers to a client:

> The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which

they are to be pursued to the extent the client is willing and able to do so. For example, a lawyer negotiating on behalf of a client should provide the client with facts relevant to the matter, inform the client of communications from another party and take other reasonable steps to permit the client to make a decision regarding a serious offer from another party. A lawyer who receives from opposing counsel either an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case should promptly inform the client of its substance unless prior discussions with the client have left it clear that the proposal will be unacceptable.

TEX.DISCIPLINARY R. PROF'L CONDUCT 1.03 cmt. 1.

 In short, a defendant must make the ultimate decision on his plea and bear its consequences, rather than his or her attorney, and, in order to make the decision intelligently, he must be given all information relevant to the decision. *Flores*, 784 S.W.2d at 581; *Hanzelka v. State*, 682 S.W.2d 385, 387 (Tex.App.—Austin 1984, no pet.). Defense counsel's failure to promptly inform a client of the imminent expiration of a plea offer effectively deprives a client of a "last chance" opportunity to avoid a potential sentence of much greater length than the term of the offer and is an omission that falls below an objective standard of reasonableness. Consequently, we hold that the failure of counsel to promptly inform a client of a deadline expressly attached to a plea offer falls below an objective standard of reasonableness.

---

1. *See Martinez*, 28 S.W.3d at 818 (Yanez, J., dissent) (stating, where no deadline is included with the offer, reasonably effective assistance of counsel must include warning client that State has not agreed to hold offer open for any specified period and that offer can be withdrawn at any time because many clients may not be familiar enough with legal proceedings to anticipate that State may withdraw its offer at any time).

## C. Application

Here, both prongs of the *Strickland* analysis have been met. Appellant's contention is firmly rooted in the record. *See Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex.Crim.App.1994). The facts pertinent to Appellant's claim of ineffective assistance of counsel and the resulting prejudice were developed at a pretrial hearing on defense counsel's "Motion to Withdraw" and "Motion to Dismiss the Indictment Because of Outrageous Government Conduct."

According to the motion to withdraw, defense counsel sought to withdraw from his representation of Appellant based on a conflict that had allegedly arisen as a result of his failure to communicate to Appellant the deadline attached to the State's plea offer. The motion to dismiss the indictment alleged that the State engaged in "outrageous government conduct" by discriminating against Appellant in the plea bargaining process. Specifically, Appellant alleged that he was treated differently from the other four co-defendants in the plea bargaining process because he was the only defendant that ultimately went to trial for capital murder and received a life sentence. In the motion to dismiss, Appellant made the following arguments:

1. The government lawyers in this case made a plea bargain offer to [Appellant] and to the Co–Defendant Carlotta D. McCoy ... to lesser charges, and specified the same date for acceptance of the said offer. The particular date expired and the government lawyers then reduced the offer as to the Defendant McCoy from 20 years to 15 years. The new offer was taken up by the Defendant McCoy and a conviction was accomplished on August 18, 1999.

2. [Appellant] was on the same timetable as the Defendant McCoy. At the time of the McCoy conviction on her plea of guilty [Appellant] by his attorney had already informed the government lawyers of his acceptance of the plea bargain offer.

3. [Appellant], herein, has been treated differently from the Co–Defendant McCoy. The same opportunity was not offered to him.

4. [Appellant] exercised his basic constitutional protections and asked for a lesser offer but did accept the proffered offer.

5. The government lawyers now seek to prosecute [Appellant] to a greater charge of Capital Murder.

6. The government lawyers accomplished a conviction of the Defendant Jerrard Breax [sic] ... to a 50 year sentence. The government now seeks to impose a life sentence on [Appellant] which would be a greater sentence than received by Jerrar [sic] Breaux, of which [Appellant] would serve more years than the acknowledged main actor-shooter, Jerard Breaux, of the deceased in this case.

At the hearing on pretrial motions, the trial court first addressed the motion to withdraw. In addition to noting that Appellant was indicted in March 1996, the prosecutor handling the case testified that there was originally a forty-five year plea offer that was later reduced to a thirty-five year offer near the beginning of 1999. Defense counsel acknowledged that the offer remained outstanding for "multiple months." At the outset of the hearing, however, defense counsel testified:

I was court-appointed on this case some time ago by Judge Wilson. And in the process relevant to this motion, there has been a—there was a plea bargain offer of 35 years that was offered to the defendant Marcus Turner. And there was a deadline of—I believe it was July the 16th of 1999, that this offer had

to be accepted or rejected. I never made that deadline information data available or informed the defendant, Mr. Marcus Turner, of that deadline. Consequently, that deadline came and expired. There was an extension of a few more days, a week after that, I believe, and then Mr. Turner accepted the plea bargain, but it was at a time when the prosecutor informed me, Mr. Colston, that—that the offer had expired, had been withdrawn. Mr. Turner at no time knew that there was a deadline to the offer because I never made that information available. And as such, I believe that there is a conflict here between Mr. Turner and myself, as his court-appointed counsel, which cannot be resolved in a manner, in any manner because it is the belief of Mr. Turner that I am the person that is responsible for him being tried for capital murder, and with an automatic life sentence upon him being found guilty which is a far greater sentence than 35 years.

Defense counsel further testified that he received a letter from the prosecutor assigned to Appellant's case on July 8, 1999, regarding the impending expiration of the State's thirty-five year offer in Appellant's case on July 16, 1999. The prosecutor requested that the trial court take judicial notice of the letter, which stated as follows:

Dear [Defense Counsel [2]]:

I am writing you in regard to Marcus Turner. The State has made an offer of 35 years on this case. If Mr. Turner accepts this offer, the case must be **pled by noon on July, 16, 1999.** If Mr. Turner does not plead by that time, this offer will be revoked automatically and

we will proceed to trial on the offense of Capital Murder.

Defense counsel testified, and the prosecutor acknowledged, that he called the prosecutor on July 15, 1999, and asked for an extension to the offer. The prosecutor agreed to extend the offer until July 20, 1999. It is further undisputed that defense counsel never contacted the prosecutor during that time frame to convey any acceptance of the offer by Appellant.

Appellant also testified at the hearing strictly for purposes of the motion to withdraw. In response to questioning by defense counsel, Appellant testified that he was never informed of a deadline for the State's plea offer. However, in response to cross-examination by the prosecutor, Appellant contended that he was never informed of *any* plea offer by the State until two days prior to the hearing.

The trial court continued the hearing for purposes of addressing the motion to dismiss for outrageous government conduct. Defense counsel requested that the trial court take judicial notice of the court's records of Appellant's co-defendants in the case and called the prosecutor to testify as a sponsoring witness to those records. The prosecutor testified to the following plea arrangements accepted in the cases of the co-defendants: co-defendant Breaux, the shooter, accepted a plea offer of fifty years for the offense of aggravated robbery; co-defendant Jackson was allowed to enter an open plea of guilty to the offense of aggravated robbery with a deadly weapon, and the trial court sentenced him to twenty years; co-defendant Stanford accepted a plea offer of twenty years for the offense of aggravated robbery; and co-defendant McCoy accepted a plea offer for fifteen

---

**2.** The letter was addressed to defense counsel, but the heading read "Dear Leon." During the hearing on pretrial motions, it was estab-

lished that the name "Leon" appeared in the heading on the letter to defense counsel by mistake.

years for the offense of aggravated robbery with a deadly weapon.

The prosecutor further acknowledged that, regarding plea negotiations, Appellant and co-defendant McCoy had the same deadline of July 16, 1999, attached to their respective plea offers. He testified that the deadline for accepting the plea offers expired for both Appellant and McCoy, but due to the different circumstances of their cases, McCoy was permitted to accept a reduced offer beyond the expiration date and Appellant was not. Specifically, the prosecutor argued that he did not think that "[Appellant] should be granted any special favors because he wasn't smart enough to accept an offer in a timely fashion."

In concluding the pretrial hearing on defense counsel's motion to withdraw and motion to dismiss for outrageous government conduct, defense counsel offered and admitted an August 20, 1999 letter from defense counsel to the Tarrant County District Attorney evidencing a final attempt to re-open plea negotiations. The letter stated as follows:

Esteemed Mr. Tim Curry,

The above case is scheduled for jury trial on September 7, 1999. This case involves five defendants four of which have pleaded guilty on negotiated pleas. The shooter–defendant Jerrard Breax, No. 0615142, received a 50 year sentence and the others received some 20 and 15 years sentences. Defendant Mark Cornelle Jackson, No. 0615742, received a 20 year sentence. Defendant Stormy France Stanford, No. 0616400, received a 20 year sentence. The last female defendant Carlotta D. McCoy, No. 0619047, was sentenced to 15 years this week. Mr Shawn Colston, ADA, is the prosecutor assigned to these cases. My client by appointment is Marcus Turner who was offered a 45 year sentence at the initial stages of this prosecution. After some months this offer became 35 years. Mr. Colston has not deviated from this offer for a protracted period. Marcus Turner was not the shooter and was not armed during the robbery of a small convenience store in Fort Worth, Texas. A written statement by Mr. Turner detailing his part was obtained from him after his arrest. The prosecutors have indicated a waiver of the death penalty. Mr. Turner by his statement was not in the store at the time of the shooting. Mr. Turner has three prior arrests for misdemeanors on which he served 16 days of jail for Criminal Trespass and Evade Arrest. A POM U/2 Oz was dismissed on the same date of the other convictions, 12–06–95.

Because of his prior record and his youthfulness it was quite a task for Mr. Turner to accept the concept of a considerable sentence vis–a–vis his role in the offense. Recently as the trial loomed on the horizon the wisdom of acceptance of a certain fate became unclouded. Mr. Turner is ready to embark on a march to a definite destiny.

However this acceptance by Mr. Turner is a bit tardy since Mr. Colston had set a acceptance–rejection timetable of July 16, 1999. In order to facilitate the oscillating Mr. Turner in his decision making I did not communicate the deadline timetable that the prosecutor had placed on the case. I had sent a memorandum to Mr. Colston after that date indicating an extension was necessary. Mr. Colston has also communicated to Attorney Mr. Leon Haley the same timetable for the defendant Carlotta D. McCoy on a 20 year offer. This changed partially as her plea offer was reduced from 20 to 15 years and her conviction was accomplished on Tuesday, August 18, 1999. I had indicated to

Mr. Colston that Mr. Turner was ready to proceed to a plea of guilty on the 35 year offer. Today, August 20, 1999, at circa 10:30 a.m., I again advised Mr. Colston that Mr. Turner was ready to enter a plea. I was informed that it was too late and that the case must be tried. With a written statement in hand most intelligent people would conclude that a conviction for Capital Murder is inevitable along with its concomitant LIFE sentence. This would mean that Mr. Turner would receive and serve a longer sentence than that of the defendant Breaux who was the main actor and shooter in this case.

I believe justice would be better served if Mr. Turner entered into a plea bargain offer compatible with the other co–defendants in this case. I ask that you review this case and advise at your first convenience.

Thank you for your courtesy and consideration on this matter.

Ultimately, the trial court denied defense counsel's motion to withdraw and motion to dismiss for outrageous government conduct, and the case advanced to trial several days later.

Citing the Texas Court of Criminal Appeals' decision in *Kober v. State*, the State first argues that the trial court made an implied factual finding that Appellant's testimony regarding his knowledge of the plea offer and deadline was not credible and that this implied finding of Appellant's lack of credibility is entitled to "almost total deference." 988 S.W.2d 230, 233 (Tex. Crim.App.1999) (noting that although prejudice prong of *Strickland* is a mixed question of law and fact, that question often contains subsidiary questions of historical fact that depend on credibility and demeanor of witnesses, and such credibility determinations by trial court are entitled to "almost total deference" under *Guzman*

*v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997)). In support of this argument, the State emphasizes Appellant's internally inconsistent testimony by comparing his testimony on direct examination that he was never informed of a *deadline* attached to the thirty-five year plea offer with his testimony on cross-examination that he was never made aware of *any* plea whatsoever. While Appellant's testimony was inconsistent, it nevertheless established that defense counsel definitely failed to convey the deadline. In other words, despite Appellant's inconsistent testimony, there was no other evidence from which the trial court could have made an implied factual finding that Appellant was informed about a deadline attached to the thirty-five year plea bargain. The remaining evidence concerning defense counsel's failure to convey the deadline is entirely consistent and uncontroverted. Consequently, we reject this argument by the State.

The State next argues that the record shows that the failure of defense counsel to tell Appellant of the plea offer deadline was part of defense counsel's strategy. The State emphasizes the August 20, 1999 letter from defense counsel to the district attorney, which states that it had been "quite a task for [Appellant] to accept the concept of a considerable sentence vis-a-vis his role in the offense" and "[i]n order to facilitate the oscillating [Appellant] in his decision making I did not communicate the deadline timetable that the prosecutor had placed on the case." The State argues that it was reasonable trial strategy for defense counsel to conclude that withholding the deadline information was in Appellant's "best interest" and to use "reasonable persuasion to guide [Appellant] to a sound decision." We disagree.

We recognize Appellant's burden to rebut the presumption that trial counsel's challenged conduct involved sound tri-

al strategy. *Jackson,* 877 S.W.2d at 771. To satisfy this burden, Appellant must show what the strategy was and why it was unreasonable. *Rodriguez v. State,* 974 S.W.2d 364, 371 (Tex.App.—Amarillo 1998, pet. ref'd). Appellant has satisfied that burden.

■ Appellant has presented a record from which we can only determine that trial counsel's performance was not based on sound trial strategy. *See Gravis v. State,* 982 S.W.2d 933, 937 (Tex.App.—Austin 1998, pet. ref'd) (holding appellant may rebut presumption of effectiveness by providing record from which court may determine trial counsel's performance was not based on sound strategy). The August 20, 1999 letter states that defense counsel withheld the deadline from Appellant because he thought Appellant would make his decision faster not knowing. We refuse to accept this as reasonable strategy. By withholding the deadline information from Appellant, he only allowed Appellant to continue "oscillating." Withholding such material information as the deadline could not expedite Appellant's decision-making process. On the record before us, the only reasonable strategy to "facilitate the oscillating Appellant" would have been to *timely* notify Appellant of the imminently approaching deadline. Contrary to the State's contention, we believe Appellant's argument on appeal and the record compel this conclusion.

The State finally argues that Appellant had ample opportunity to accept the plea offer and that defense counsel's failure to notify Appellant of the July 16, 1999 deadline was neither deficient nor prejudicial. We do not agree.

First, as stated above, we believe that the failure to promptly communicate a deadline expressly attached to a plea offer constitutes performance below the objective standard of reasonableness. The testimony and documentary evidence on the record before us strongly supports a finding that defense counsel wholly failed to notify Appellant of the July 16, 1999 deadline attached to the State's thirty-five year plea offer.

Secondly, the record shows that Appellant was prejudiced by defense counsel's ineffectiveness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. *See Strickland,* 466 U.S. at 688–94, 104 S.Ct. at 2065–68. Defense counsel testified, and the prosecutor acknowledged, that defense counsel contacted the prosecutor after the deadline had expired and told him that Appellant wanted to accept the thirty-five year offer. Moreover, defense counsel's August 20, 1999 letter to the district attorney clearly shows that Appellant expressed his desire to accept the State's offer of thirty-five years after it had expired. The letter further establishes that the State refused to reinstate the offer on more than one occasion. Also, in light of Appellant's receiving an automatic life sentence from a jury verdict finding him guilty of capital murder, additional harm to Appellant might be inferred by the plea agreements for the lesser offenses, *i.e.,* aggravated robbery, that were reached in the cases of Appellant's co-defendants. This inference of harm is especially apparent in the case of co-defendant McCoy, who was given the same acceptance deadline as Appellant, but who, unlike Appellant, was allowed to accept the offer after it had expired. Because the record shows that Appellant would have timely accepted the offer had the deadline been properly conveyed to him, Appellant has satisfied the burden of showing prejudice. *See Paz,* 28 S.W.3d at 675.

In sum, the record on appeal establishes that defense counsel performed defectively

under the objective standard of reasonableness by failing to convey to Appellant the deadline attached to the State's plea offer of thirty-five years and that there is a reasonable probability that the result of the proceedings would have been different had defense counsel properly conveyed the deadline of the offer. Therefore, under the test enunciated in *Strickland,* Appellant's attorney did not provide effective assistance.[3] We sustain Appellant's fifth point. In light of our ruling on Appellant's fifth point, we do not need to address Appellant's first through fourth points. *See* TEX. R.APP.P. 47.1.

## IV. REMEDY

The Court of Criminal Appeals has stated that, in cases where an appellant is deprived of the ability to accept a plea offer because of his counsel's ineffective assistance, the proper remedy is to reverse the trial court's judgment and remand the cause with orders to withdraw the appellant's plea, require the State to reinstate the plea offer as it existed prior to the Sixth Amendment violation, and allow the appellant to replead to the indictment.[4] *Ex parte Lemke,* 13 S.W.3d at 798.

## V. CONCLUSION

We reverse the trial court's judgment and remand the cause to the trial court. We order the trial court to withdraw Appellant's plea, order the State to reinstate its thirty-five year plea offer, and order the trial court to allow Appellant to replead to the indictment in this cause. *Id.*

---

**3.** 466 U.S. at 687, 104 S.Ct. at 2064.

**4.** "The government may of course, in proper cases, seek to demonstrate that intervening circumstances have so changed the factual premises of its original offer that, with just cause, it would have modified or withdrawn its offer prior to its expiration date." *Ex parte Lemke,* 13 S.W.3d at 798.