**Galin E. FRYE, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 70504.**

Missouri Court of Appeals,
Western District.

March 23, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 2010.

Application for Transfer Denied
June 29, 2010.

Emmett D. Queener, Columbia, MO, for appellant.

Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Before Division Four: THOMAS H. NEWTON, Chief Judge, JOSEPH M. ELLIS, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Galin Frye appeals the motion court's denial of his Rule 24.035 motion for post-conviction relief following an evidentiary hearing. Frye contends that the motion court clearly erred in denying his motion because he received ineffective assistance of counsel as a result of trial counsel's failure to inform him of a plea offer made by the State. The plea offer would have permitted Frye to plead to the amended charge of misdemeanor driving while revoked instead of going to trial on the charge of felony driving while revoked. Frye claims he would have taken the plea offer amending his charge to a misdemeanor had he known about the offer. Frye thus contends that his subsequent entry of an "open" guilty plea to the felony charge of driving while revoked was unknowing, involuntary, and unintelligent. We reverse and remand.

### Factual and Procedural History

On August 14, 2007, the State charged Galin Frye ("Frye") with one count of the class D felony driving while his driving privilege was revoked in violation of Section 302.321.[1] Frye had previously been convicted of three misdemeanor driving while revoked charges on May 21, 2004, April 20, 2006, and February 10, 2006.

Frye's preliminary hearing was scheduled for November 9, 2007. Frye contacted counsel the day before to inform him that he could not attend the hearing. Trial counsel appeared on Frye's behalf and received a continuance of the preliminary hearing to January 4, 2008. Frye had no scheduled court appearances between November 9, 2007, and January 4, 2008.

On November 15, 2007, the State sent Frye's trial counsel a written plea offer

---

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

("Offer"). The Offer was file stamped as received in trial counsel's office on November 19, 2007. The Offer stated:

My recommendation is a[sic] follows: 3 and defer, on the felony with 10 days "shock" in the Boone County Jail; *OR* 90 days to serve on an amended misdemeanor in the Boone County Jail.

I am going to subpoena witnesses for the preliminary hearing on January 4, 2008. I will need to know if Mr. Frye will be waiving [sic] to preserve the offer by noon on December 28, 2007.

Trial counsel's highlighting of, and other pen marks on, the written Offer, coupled with trial counsel's testimony at the post-conviction hearing, confirm that trial counsel actually received and read the Offer approximately one week after it was mailed.

Frye testified at the post-conviction hearing that he had no knowledge of the Offer until after he was convicted, sentenced, and incarcerated.[2] At the time of the Offer, Frye lived in St. Louis, Missouri. Trial counsel had Frye's mailing address. Frye testified at the post-conviction hearing that during the Offer window he did not see or speak with trial counsel and that his mailing address did not change.

Trial counsel testified at the post-conviction hearing that trial counsel could not recall whether he had communicated the Offer to Frye. Trial counsel testified that there was no correspondence in his file to indicate any effort was made by his office to mail the Offer to Frye. Trial counsel could not recall speaking with, seeing, or ever attempting to contact Frye during the Offer window of November 15, 2007, to December 28, 2007.

On January 4, 2008, Frye appeared for his continued preliminary hearing. Trial counsel, who was unable to attend, placed a note in Frye's file for the docket attorney covering the hearing. The note stated "—Probably should—Talk to him, from St. Louis, rec is tagged—Also has new misd, (go ahead & enter) WAIVE." Trial counsel interpreted his note during the post-conviction hearing. He testified that his note indicated that the Offer was included in the file and should be discussed with Frye. By this time, however, the Offer had expired. Frye testified that the docket attorney did not advise him of the expired Offer at the time of the preliminary hearing. Trial counsel interpreted his note's reference to "new misd" as referring to the fact that Frye had received another charge. Frye testified during his post-conviction hearing that he received another misdemeanor driving while revoked charge on December 30, 2007.[3] This was two days after the Offer expired. It is unclear how trial counsel knew of Frye's new charge, though we surmise Frye must have had a discussion of some sort with his counsel between December 30, 2007, the date of the new charge, and January 4, 2008, the date of the preliminary hearing for which trial counsel had prepared the hand written instructions for the docket attorney.

On March 3, 2008, Frye entered an "open" guilty plea to the class D felony of driving while revoked. The new charge Frye received on December 30, 2007, was not addressed during the guilty plea hearing. The State recommended a three year sentence, deferred, with ten days shock time. This was identical to the first of the two options that had been described in the

2. Frye testified at the post-conviction hearing that his post-conviction counsel sent him a copy of the Offer while he was incarcerated.

3. The record does not reflect where the new charge was received.

Offer. The sentencing court did not accept the State's recommendation. Frye was sentenced on May 5, 2008 to three years imprisonment in the Missouri Department of Corrections.

On June 9, 2008, Frye filed a *pro se* motion seeking post-conviction relief pursuant to Rule 25.035 ("Motion"). Frye's Motion alleged that trial counsel was ineffective for failing to communicate the Offer. Following an evidentiary hearing, the motion court denied Frye's Motion. This appeal follows.

### Standard of Review

Appellate review of the disposition of a motion filed under Rule 24.035 is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 24.035(k); *Krider v. State*, 44 S.W.3d 850, 856 (Mo.App. W.D. 2001). The trial court's "findings and conclusions are clearly erroneous only if, after reviewing the entire record," we are left with a "definite and firm impression that a mistake has been made." *Id.*

### Analysis

In Frye's sole point on appeal, he contends that the motion court clearly erred in denying his Motion following an evidentiary hearing because his guilty plea was unknowing, involuntary, and unintelligent. Frye contends that trial counsel failed to inform him of the Offer. Frye contends that had he known of the Offer he would have accepted the prong of the Offer which would have permitted him to plead to an amended misdemeanor charge of driving while revoked, and that he would not have entered an "open" guilty plea to the class D felony charge of driving while revoked.

■ A guilty plea must be a "voluntary expression of the defendant's choice, and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *State v. Roll*, 942 S.W.2d 370, 375 (Mo. banc 1997). Once a guilty plea is entered, all claims that counsel was ineffective are waived, "except to the extent that the conduct affected the voluntariness and knowledge with which the plea was made." *Worthington v. State*, 166 S.W.3d 566, 573 (Mo. banc 2005).

■ The plea process in a criminal adjudication warrants the same constitutional guarantee of effective assistance of counsel as trial proceedings. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). To prevail on an ineffective assistance of counsel claim following a guilty plea, Frye must show by a preponderance of the evidence that: (1) trial counsel's performance was deficient because he failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances; and (2) the deficient performance prejudiced Frye. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997). If either the performance prong or the prejudice prong is not met, then we need not consider the other, and Frye's claim of ineffective assistance of counsel must fail. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

### *Performance Prong*

■ To satisfy the performance prong, Frye must show by a preponderance of the evidence that trial counsel's failure to inform him of the Offer fell below an objective standard of reasonableness. Reasonableness is looked at in light of all of the circumstances, and the prevailing professional norms at the time of the alleged error. *Strickland*, 466 U.S. at 688–89, 104 S.Ct. 2052. Frye must overcome the presumption that any challenged action was

sound trial strategy, and that counsel rendered adequate assistance of counsel, making all significant decisions in the exercise of professional judgment. *Id.* at 689–90, 104 S.Ct. 2052.

■ "Failure of defense counsel to communicate a plea offer ordinarily constitutes deficient performance" of counsel. *Members v. State*, 204 S.W.3d 210, 212 (Mo.App. W.D.2006) (citing *State v. Colbert*, 949 S.W.2d 932, 946 (Mo.App. W.D.1997)). In *Members*, defendant contended his guilty plea was involuntary and that he received ineffective assistance of counsel because counsel had not communicated a plea offer. *Id.* at 211. The motion court did not permit the defendant an evidentiary hearing. *Id.* We concluded that the failure to communicate a plea offer satisfies the performance prong of *Strickland*. *Id.* at 213. Because the motion court had not permitted the defendant an evidentiary hearing to determine whether, in fact, the offer had not been communicated, we reversed and remanded the case for an evidentiary hearing. *Id.* In *Colbert*, defendant claimed he was not advised of the State's plea offer for twenty-five years imprisonment on Count I and five years imprisonment on Counts II and III, for a total of thirty years imprisonment. 949 S.W.2d at 945. Defendant claimed that he was prejudiced as a result, since unaware of the offer, he elected to go to trial where he was convicted and received life imprisonment on one count and multiple year sentences on other counts to run consecutive with the life sentence. *Id.* at 938, 946. The court found defendant had sufficiently alleged ineffective assistance of counsel based on counsel's failure to communicate an offered plea and remanded the case for an evidentiary hearing. *Id.* at 946.

In *Cottle v. Florida*, 733 So.2d 963 (Fla. 1999), the court held that "[t]he caselaw uniformly holds that counsel is deficient when he or she fails to relate a plea offer to a client." *Id.* at 966 (citation omitted). Similarly, in *Turner v. Texas*, 49 S.W.3d 461 (Tex.App.2001), the court held that defense counsel's failure to communicate a deadline attached to a plea offer constituted ineffective assistance of counsel. The court held that it was not reasonable trial strategy for trial counsel to withhold the deadline from the defendant merely because trial counsel believed the defendant would be forced to make a faster decision. *Id.* at 470. The court stated "the only reasonable strategy ... would have been to timely notify Appellant of the imminently approaching deadline." *Id.*

Here, Frye contends the Offer was not communicated to him at all. We can conceive of no reasonable trial strategy that would justify trial counsel's failure to communicate the Offer to Frye. We conclude, consistent with *Members*, that if Frye was not advised of the Offer, he has established the *Strickland* performance prong. We turn our attention, therefore, to whether Frye established that he was not told of the Offer.

In its Findings of Fact, Conclusions of Law, and Judgment, the motion court acknowledges Frye's testimony that he was not advised of the Offer until after he was incarcerated. The motion court did not indicate whether it found Frye's testimony to be believable. The motion court acknowledged trial counsel's testimony that he could not recall whether he had informed Frye about the Offer. The trial court found trial counsel's testimony to be credible. The effect was a finding that trial counsel credibly reported no recollection of informing Frye of the Offer. The motion court did not make an express finding with respect to whether Frye knew of the Offer. However, the motion court found that "even assuming that counsel failed to tell Movant of the offer, counsel

cannot be faulted for failing to inform Movant of an offer when Movant fails to stay in touch with counsel."

The motion court was required to "issue findings of fact and conclusions of law on all issues presented." Rule 24.035(j) (emphasis added). While " '[t]here is no precise formula to which findings of fact and conclusions of law must conform,' they must address all of the issues raised and be sufficiently specific to allow for meaningful appellate review." *Grimes v. State*, 260 S.W.3d 374, 375 (Mo.App. W.D.2008) (quoting *Ivory v. State*, 211 S.W.3d 185, 189 (Mo.App. W.D.2007)). We are typically required to remand a case back to the court for requisite findings of fact that have not been made. *Id.* We do not believe the absence of an express finding of fact as to Frye's knowledge of the Offer requires remand, however. The motion court found trial counsel's testimony credible. Trial counsel's testimony included not only his concession of no memory one way or the other of having informed Frye of the Offer but also a general discussion of difficulties trial counsel had communicating with Frye. By finding that "even if" Frye did not know of the Offer it was Frye's fault, the motion court can be reasonably assumed to have made the implicit finding that Frye did not know of the Offer and that he was to blame for his lack of knowledge. We believe, therefore, that the motion court's findings of fact are "sufficiently specific to allow for meaningful appellate review." *Id.* We agree with the trial court's implicit finding that Frye was not informed of the Offer. We do not agree, however, that the record supported a finding that Frye was to blame for trial counsel's failure to communicate the Offer.

At the post-conviction hearing, trial counsel testified:

Counsel, we've talked about this on the phone. I have wracked my brain to try to remember what happened in Mr. Frye's case. I can tell you that I do remember that communication—I'm not suggesting through faults of his own, but he lived in St. Louis, and communication—I believe I had different phone numbers from time to time. **I'm not sure if I communicated this to him or not,** simply because I don't remember him being in court with me as often as most of my other clients; that he was from St. Louis, and that I think that he missed court a few times. And I don't believe I saw him again until after this offer would have been revoked by operation of the language of it, of the letter.

(Emphasis added.) Although trial counsel testified that Frye "missed court a few times," the only missed court appearances reflected in the record were between January 4, 2008, and March 3, 2008, after the Offer expired. During the Offer window, Frye never failed to appear in court because there were no scheduled court appearances during that time. Though trial counsel stated that Frye had different phone numbers from time to time, the only specific evidence relating to how this impacted trial counsel's communication with Frye was trial counsel's testimony that: "Oh, I called him on the 28th and noted in my file that his phone was not in service," referring to January 28, 2008. Trial counsel also testified that on February 4, 2008, Frye gave him an updated number, suggesting Frye initiated contact with him to provide this information. Trial counsel never testified that he made *any* unsuccessful effort to contact Frye by phone during the Offer window. Instead, trial counsel conceded: "I'm not sure if I communicated this [the Offer] to him or not."

The record also indicates that there was no communication by mail between trial counsel and Frye during the Offer window. Frye's client file is void of correspondence

to Frye communicating the Offer. Trial counsel testified that the absence of a letter in Frye's file reflecting transmittal of the Offer would tend to indicate that no effort was made to communicate the Offer to Frye in writing.

Pursuant to the Rules of Professional Conduct that govern the Missouri Bar, Frye's trial counsel had an absolute duty to keep Frye informed of plea communications. Rule 4–1.4 states: "(a) A lawyer shall: (1) keep the client reasonably informed about the status of the matter; [and] ... (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding representation." *See also In re Crews*, 159 S.W.3d 355, 359 (Mo. banc 2005). Pursuant to Rule 4–1.4 comments one and two, counsel is required to keep the client informed of significant developments in the case, and "a lawyer who receives from opposing counsel ... a proffered plea bargain in a criminal case ***must promptly inform the client of its substance*.**" (Emphasis added).

The motion court correctly noted that "[t]he reasonableness of counsel's actions [to determine if the performance prong was met] may be determined or substantially influenced by the defendant's own statement or actions." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. However, counsel's failure to act is only justifiable in circumstances where, because of the defendant's own conduct, counsel was unable to properly carry out his responsibilities. *State v. Johnson*, 901 S.W.2d 60, 63 (Mo. banc 1995) (finding that trial counsel was not ineffective for failing to call a witness because the defendant failed to inform him of the witness's existence until after trial). It is only when a defendant's behavior leads to a fundamental lack of information on the part of counsel that counsel is excused from the reasonable standard of performance. *Id.*; *see also Cherco v. State*, 309 S.W.3d 819, 825–26 (Mo.App. W.D. 2010) (finding the performance prong of *Strickland* was not met because defendant failed to stay in touch with counsel, despite repeated attempts by counsel to contact him). In this case, trial counsel could not be excused from his absolute duty to communicate the Offer to Frye unless Frye's behavior caused trial counsel to be unable to do so. The record is void of *any* evidence of *any* effort by trial counsel to communicate the Offer to Frye during the Offer window, let alone any evidence that Frye's conduct interfered with trial counsel's ability to do so.

Reviewing the entire record, therefore, we are left with a definite and firm impression that a mistake has been made. The trial court clearly erred in blaming Frye for "failing to stay in touch" with counsel during the six week Offer window, a finding which effectively shifted to Frye the duty to "stay in touch," and which divested trial counsel of his absolute duty to communicate the Offer to his client. As there was no evidence that any effort of any kind was made by trial counsel to timely inform Frye of the Offer, we conclude that Frye established by a preponderance of the evidence that he was not informed of the Offer while the Offer was pending or before his guilty plea. As a result, trial counsel's performance was deficient. *Members*, 204 S.W.3d at 213. The *Strickland* performance prong has been met. We now determine whether trial counsel's failure to communicate the Offer prejudiced Frye.

### Prejudice Prong

In *Strickland*, the Supreme Court articulated the standard for prejudice, stating that a defendant must show a reasonable probability that, but for counsel's alleged deficiencies, the result of the proceeding would have been different.

*Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. The *Strickland* prejudice prong has since been interpreted by the Court in *Hill,* in the context of guilty pleas, to mean that in order to show prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. 366. The State contends that because Frye did not contend that "but for" trial counsel's failure he would have insisted on going to trial, Frye cannot establish prejudice as a matter of law. We disagree.

In *Hill,* the Supreme Court extended the *Strickland* analysis to guilty plea proceedings, noting that "our justifications for imposing the 'prejudice' requirement . . . are also relevant in the context of guilty pleas." *Hill,* 474 U.S. at 57, 106 S.Ct. 366 (citing *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052). These justifications were:

> The government is not responsible for, and hence not able to prevent, attorney errors that will result in reversal of a conviction or sentence. Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid. Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. ***Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.***

*Id.* (citing *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052) (emphasis added). *Hill* thus acknowledges that the *Strickland* inquiry

for "prejudice" necessarily depends on the specific evidence and circumstances surrounding the claimed error. *Id.* It follows, therefore, that the determinative factors for evaluating whether counsel's ineffectiveness is prejudicial must be based on the specific facts and circumstances of the case. Reliance on *Hill'*s "template" that a defendant must contend that "but for" counsel's ineffective assistance the defendant would have insisted on going to trial as determinative of whether a defendant can establish prejudice completely ignores *Strickland'*s looser emphasis on whether a defendant can establish "an adverse effect on the defense." *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. We conclude that though prejudice may, and often will, be established by a defendant's showing that "but for" counsel's ineffective assistance, the defendant would not have pled guilty and would have insisted on going to trial, this is not the only way prejudice can be established. According to *Strickland,* the test of prejudice is whether "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. *See Colbert,* 949 S.W.2d at 940 ("To demonstrate prejudice, the movant must show a reasonable probability that, but for his attorney's unprofessional errors, *the result of the proceeding would have been different.*") (citing *State v. Harris,* 870 S.W.2d 798, 814 (Mo. banc 1994), *cert. denied,* 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994)) (emphasis added).

In a case similar to the one before us, our Supreme Court has demonstrated its agreement with this approach to establishing prejudice. In *Dobbins v. State,* 187 S.W.3d 865 (Mo. banc 2006), Dobbins, relying on the advice of counsel, rejected a ten year imprisonment plea with the State, and instead entered an "open" guilty plea. *Id.* at 866. Dobbins was subsequently sentenced to eighteen years for possession of marijuana with the intent to distribute.

*Id.* Dobbins filed a Rule 24.035 motion alleging counsel affirmatively mislead him about his eligibility for early release. *Id.* The Supreme Court found that Dobbins received ineffective assistance of counsel based on counsel's affirmative misrepresentation, and in discussing whether prejudice had been established, noted:

> Counsel's ineffectiveness must be joined with prejudice to afford Dobbins relief. In this case, ***Dobbins was prejudiced because he rejected an offer to plead to a charge resulting in a 10–year sentence. If he had known he was not able to challenge the sentence, he would not have entered an open plea, but would have accepted the offer,*** which matched the lowest sentence he could have received under the open plea agreement. Moreover, the facts relating to Dobbins' understanding of the pleas and his agreement that no one had promised leniency for the plea are irrelevant. It was not the sentence to be imposed that concerned Dobbins-it was his eligibility for sentence reduction as to any sentence that was imposed. ***His attorney's affirmative misrepresentation as to his ability to challenge the sentence prejudiced Dobbins by causing him to plead guilty when he otherwise would not have done so.***

*Id.* at 867 (emphasis added). Reading the above passage as a whole, it is apparent the Supreme Court did not employ the narrow *Hill* "but for" test to find prejudice in *Dobbins.* As in *Dobbins,* Frye did not accept a plea offer that he says he would have accepted but for counsel's ineffective assistance. As in *Dobbins,* Frye does not contend in his post-conviction motion that but for counsel's ineffective assistance, he would not have pled guilty and would have insisted on going to trial.

Here, the motion court denied Frye's post-conviction motion because "[e]ven as-

suming that counsel can be faulted for failing to tell Movant about this plea offer, Movant would not be entitled to a remand because claims under Rule 24.035 must include a claim that Movant would have gone to trial but for his counsel's errors." The motion court did not discuss *Dobbins.* Instead, the motion court cited *Beach v. State,* 220 S.W.3d 360 (Mo.App. S.D.2007), which addresses *Dobbins.* The court in *Beach* read *Dobbin*'s statement that defendant was caused "to plead guilty when he otherwise would not have done so" to mean Dobbins would not have plead guilty *and would have insisted on going to trial. Beach,* 220 S.W.3d at 367. The Southern District stated, "this sentence clearly states that, but for ineffectiveness of plea counsel, Dobbins would not have pleaded guilty. By implication, the only alternative to not pleading guilty is to go to trial. Thus, the Court applied the *Hill* standard without citation." *Id.* at 368. We decline to so interpret *Dobbins.* The Southern District's reading of a single sentence in *Dobbins* out of context ignores the balance of the Supreme Court's discussion which included the statement that had the defendant "known he was not able to challenge the sentence, ***he would not have entered an open plea, but would have accepted the offer.***" *Dobbins,* 187 S.W.3d at 867 (emphasis added). *Beach*'s interpretation of *Dobbins* and its application of *Hill* would leave a defendant with no recourse even if the defendant has clearly established that "but for" his counsel's ineffective assistance the outcome of his proceeding would have been different. Our court does not construe *Hill* to bar other means of establishing prejudice when insisting on going to trial cannot possibly remediate ineffective assistance that has affected the outcome of the proceeding. *Cherco,* 309 S.W.3d at 829–30 (finding ineffective assistance of counsel during the sentencing phase may warrant remand for resentenc-

ing without an allegation by the defendant that he would not have pled guilty and would have insisted on going to trial); *see also Members*, 204 S.W.3d at 213 (finding that a defendant has been prejudiced if the defendant proves that counsel failed to communicate a plea offer that the defendant would have accepted).

Other jurisdictions have found prejudice when counsel fails to inform a defendant of a plea offer, notwithstanding defendant's failure to contend he would have insisted on going to trial. In *Turner*, the court found "the record shows that Appellant was prejudiced by defense counsel's ineffectiveness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different." 49 S.W.3d at 470. The court went on to conclude that when a defendant was not informed of a deadline placed on a plea offer, and when "the record shows that Appellant would have timely accepted the offer had the deadline been properly conveyed to him, Appellant has satisfied the burden of showing prejudice." *Id.* In *Cottle*, defendant claimed he received ineffective assistance of counsel because his counsel failed to convey the State's plea offer. 733 So.2d at 964–65. The court held that "an inherent prejudice results from a defendant's inability, due to counsel's neglect, to make an informed decision whether to plea bargain, which exists independently of the objective viability of the actual offer." *Id.* at 969 (citations omitted).

In light of the foregoing, we find the motion court's conclusion that Frye was not prejudiced by trial counsel's failure to communicate the Offer merely because Frye did not contend that he would have insisted on going to trial to be a clearly erroneous finding of fact based on a clearly erroneous declaration of the law.

The motion court also concluded that remand of Frye's case would not be proper because now that the Offer has expired, the State cannot be compelled to renew the Offer. Moreover, according to the motion court, the State would have the power to withdraw the Offer, even if renewed, at any time before sentencing.

■ "While a defendant has no constitutional right to a plea bargain, *Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), during negotiations he is entitled to presuppose fairness in the agreement." *State v. Price*, 787 S.W.2d 296, 299 (Mo.App. W.D.1990) (citing *Santobello v. New York*, 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). This fairness guarantee was restricted in *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). A "plea agreement standing alone is without constitutional significance." *Id.* at 507. Thus, "[u]nless a plea agreement impaired the voluntariness or intelligence of a guilty plea, the defendant has no constitutional right to have the plea specifically enforced." *Price*, 787 S.W.2d at 299 (citing *Mabry*, 467 U.S. at 510, 104 S.Ct. 2543). The Court in *Mabry*, in discussing a plea offer, "found that the question of whether a prosecutor was negligent or otherwise culpable in first making and then withdrawing an offer was not relevant to a due process argument." *Price*, 787 S.W.2d at 299–300 (citing *Mabry*, 467 U.S. at 511, 104 S.Ct. 2543). Thus, it does in fact appear that a plea offer can be withdrawn at any time before it is accepted by the court, and a plea offer once accepted by the defendant can be withdrawn without recourse,[4] unless, as noted in *Mabry*, the plea agreement impaired the voluntariness of the guilty plea.

However, we are not dealing with a case of claimed prosecutorial misconduct.

4. For example, the State may well have withdrawn the Offer, even if accepted by Frye, if it became aware prior to sentencing of Frye's new charge on December 30, 2007.

*Price, Mabry*, and the other cases cited by the motion court in its Judgment relating to the enforceability of a plea offer or agreement all arose in the context of a defendant's claim of prosecutorial misconduct in withdrawing or failing to honor a plea. Here, the claimed constitutional violation relates to Frye's entitlement to effective assistance of counsel. The motion court suggests that unless there is a suitable means of remediating the demonstrated ineffective assistance of counsel, there can be no prejudice. In other words, the motion court suggests that because we cannot compel the State to renew the Offer, Frye is not prejudiced because we cannot, by remanding this case, restore Frye to the position he would have been in but for the ineffective assistance.

We do not believe the determination of prejudice can be bootstrapped in this fashion. The State had exclusive control over the charging of Frye's offense. Thus, had Frye been advised of the Offer, and had he accepted the Offer, the trial court would have been bound to accept the guilty plea for the misdemeanor charge.[5] The maximum jail sentence that the trial judge could have imposed for the misdemeanor plea was one year imprisonment. Section 558.011. The maximum sentence for the class D felony to which Frye entered an

"open" guilty plea was four years. *Id.* Frye received three years. Because of trial counsel's failure to inform Frye of the Offer, Frye pled guilty to a felony instead of a misdemeanor and was subject to a maximum sentence of four years instead of one year. We conclude that notwithstanding the practical difficulties associated with Frye's recourse, Frye has nonetheless established prejudice pursuant to *Strickland*. We are left with a definite and firm impression that a mistake was made. We find that Frye did sufficiently prove, by a preponderance of the evidence, that he was prejudiced through trial counsel's failure to convey the State's Offer.[6]

We are left then with discerning the appropriate recourse for Frye's established Rule 24.035 violation. Rule 24.035(j) provides that if a basis for Rule 24.035 relief is determined to exist, "the court shall vacate and set aside the judgment and shall discharge the movant or resentence the movant or order a new trial or correct the judgment and sentence *as appropriate.*" (Emphasis added.) Though in this case, the *"appropriate"* remediation might be to afford Frye the opportunity to plead guilty to the amended charge of misdemeanor driving while revoked, we appreciate that we are not empowered to order the State to reduce the charge against Frye. A remand, therefore,

5. Of course, the trial court would have been free to sentence Frye along the continuum of the range of punishment applicable to the misdemeanor, just as it was free to sentence Frye along the continuum of the range of punishment for the felony to which Frye entered his "open" plea. Had the Offer only addressed a non-binding sentencing recommendation in exchange for a plea of guilty on the original felony charge of driving while revoked, Frye would be hard pressed to establish prejudice, notwithstanding counsel's failure to communicate the Offer, as the State's Offer would not have been binding, in any manner, on the trial court.

6. We are aware that Frye's new misdemeanor charge apparently influenced trial counsel's decision not to request an extension of the Offer from the State. That new charge was obtained by Frye after the Offer window expired. Trial counsel's belief about whether he could have persuaded the State to renew the Offer is irrelevant as Frye does not contend ineffective assistance of counsel on this basis. It is sufficient for Frye's showing of prejudice that the Offer window would have permitted Frye to accept the Offer and to have submitted to a guilty plea hearing on the amended charge in advance of receiving yet another charge for driving while revoked.

may leave Frye with but two options— proceed to trial or plead guilty to and be resentenced for the same felony driving while revoked charge to which Frye originally entered his "open" guilty plea. Though this is may not seem a satisfactory remedy for Frye, our alternative is to ignore the merits of Frye's claim, which we are unwilling to do.

Our Supreme Court faced the same constraint we face today in *Dobbins*. Upon finding prejudice arising out of a similar scenario where a defendant claimed ineffective assistance of counsel prejudiced him from accepting an earlier plea offer, the Court reversed the judgment and remanded the case. *Dobbins*, 187 S.W.3d at 867. We will do the same, deferring to Frye whether he desires to insist on a trial or to plead guilty to the charged offense or to such other amended charge as the State may deem it appropriate to offer.[7] In either case, we will be affording Frye that to which he is entitled—the effective assistance of counsel. We are cognizant that the State did absolutely nothing wrong in this case and is not responsible for Frye's trial counsel's failure to communicate the Offer.

### Conclusion

We reverse the judgment entered on the guilty plea and deem the guilty plea withdrawn. We remand this case for further proceedings.

All Concur.

---

7. In *Turner,* the Texas Court of Appeals remediated a similar set of circumstances by reversing the trial court's judgment and remanded the case "with orders to withdraw the appellant's plea, require the State to reinstate the plea offer as it existed prior to the Sixth Amendment violation, and allow the appellant to replead to the indictment." 49 S.W.3d at 471. We do not share the Texas court's belief that we are empowered to mandate the State to offer pleas or to amend charges, notwithstanding our finding that Frye's Sixth Amendment rights have been violated.